IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| AMERICAN APPAREL, LLC, *et al.*,[1] | Case No. 16-12551 |
| Debtors. | (Joint Administration Requested) |

**MOTION FOR AN ORDER AUTHORIZING THE DEBTORS TO (I) MAINTAIN CERTAIN CUSTOMER PROGRAMS AND (II) HONOR OR PAY RELATED PREPETITION OBLIGATIONS TO THEIR CUSTOMERS**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") move the Court (the "Motion") for the entry of an order, substantially in the form attached as Exhibit A, authorizing the Debtors, subject to any order approving the Debtors' postpetition financing facility (the "DIP Order") and the documentation in respect of the postpetition financing facility (the "DIP Documents"), to (i) maintain certain Customer Programs (as defined below) and (ii) honor or pay certain prepetition obligations related to the Customer Programs (collectively, the "Customer Obligations"). In support of this Motion, the Debtors respectfully represent as follows:

**JURISDICTION AND VENUE**

1. The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue for this matter is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] The Debtors are the following six entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): American Apparel, LLC (0601); American Apparel (USA), LLC (8940); American Apparel Retail, Inc. (7829); American Apparel Dyeing & Finishing, Inc. (0324); KCL Knitting, LLC (9518); and Fresh Air Freight, Inc. (3870). The address of each of the Debtors is 747 Warehouse Street, Los Angeles, California, 90021.

## **BACKGROUND**

2.  On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors are continuing in possession of their properties and are managing their businesses, as debtors in possession, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No official committee of unsecured creditors has been appointed in these cases.

3.  The Debtors are one of the largest apparel manufacturers in North America, employing approximately 4,700 employees across three active manufacturing facilities, one distribution facility and approximately 110 retail stores in the United States. The Debtors filed for chapter 11 in October 2015, confirmed a fully consensual plan of reorganization in January 2016, and substantially consummated that plan of reorganization on February 5, 2016. Unfortunately, the business turnaround plan upon which the Debtors' plan of reorganization was premised failed.

4.  As it became clear during the summer of 2016 that the Debtors could not continue as they were, the Debtors hired an investment banker and began a robust sales process, seeking a buyer for substantially all of their assets. The prepetition component of that sales process is now complete. The Debtors have selected Gildan Activewear SRL as the stalking horse bidder for their intellectual property and certain of their wholesale assets, and have commenced these chapter 11 cases (the "Cases") with the hope of selling the entirety of their business as a going concern in a competitive auction to be held before year end. The Debtors intend to continue operating as usual in these Cases during the period leading up to the auction so as to preserve the value of their businesses, thereby encouraging a going concern sale that would save jobs and maximize returns to creditors. Additional information regarding the Debtors and these Cases, including the Debtors' businesses, corporate structure, financial condition and the reasons for

and objectives of these cases, is set forth in the Declaration of Mark Weinsten in Support of First Day Pleadings (the "First Day Declaration"), filed contemporaneously herewith and incorporated herein by reference.

5.  In the ordinary course of their businesses, the Debtors engage in certain marketing and sales practices that are targeted to develop and sustain a positive reputation for their goods in the marketplace and are designed to attract new customers and to enhance loyalty and sales among the Debtors' existing customer base. These customer-targeted practices (collectively, the "Customer Programs") include return and exchange policies, the Debtors' "Le Club" customer-loyalty program, gift cards, and various sales promotions.

6.  Return and Exchange Policies. Consistent with industry practice, the Debtors maintain return and credit policies with respect to both cash and credit purchases to accommodate the needs and expectations of customers of the wholesale and retail businesses (collectively, the "Return Policies"). For retail customers, the Debtors allow returns for forty-five (45) days after the purchase. In February 2016, the Return Policies were changed to allow retail customers to receive a cash refund, which follows the industry standard. For wholesale customers, the Debtors provide a return policy of seven (7) days for most wholesale customers, subject to a 20% restocking fee. For certain larger wholesale customers, the Debtors allow returns at any time during the year after the purchase for a credit in the amount of the original purchase price. The Return Policies provide the Debtors' customers with comfort that they will be able to receive cash (a "Cash Refund"), an account credit, an exchange, or other adjustments if they are not satisfied with the product. By this Motion, the Debtors seek authorization to maintain the Return Policies with respect to merchandise purchased prior to the Petition Date and to continue the Return Policies with respect to merchandise purchased subsequent to the Petition

Date, in each case, as the same may be modified or discontinued in the Debtors' discretion. The Debtors estimate a total obligation for Cash Refunds in the amount of approximately $1,000,000.

7. <u>Le Club American Apparel</u>. The Debtors have a customer loyalty program whereby customers can earn "points" from their purchases of merchandise. Points do not equate to specific cash value or benefits; instead, a customer's point balance entitles the customer to various discount and promotional offers. By this Motion, the Debtors seek authorization, but not the obligation, to maintain this program, including by honoring customer point levels that accrued before the Petition Date, subject to any modification by the Debtors in their discretion.

8. <u>The Gift Card Program</u>. Prior to the Petition Date, the Debtors sold and issued gift cards at their retail stores and online that could be redeemed for merchandise at a later date (the "<u>Gift Card Program</u>"). Gift cards are typically purchased by customers, but they are also issued in connection with merchandise returns or to address customer service concerns. As of the October 31, 2016, the Debtors estimate that outstanding gift card balances totaled approximately $4,964,609. Contemporaneously with the commencement of these cases, the Debtors suspended the sale and issuance of gift cards. By this Motion, the Debtors seek authorization to honor gift cards outstanding as of the Petition Date. The ability of customers to use gift cards may be impacted by Debtors' anticipated sale process and any proposed notice procedures relating to the same will be discussed in any sale and bidding procedures motion filed with the Court.

9. <u>Sales Promotions and Coupons</u>. From time to time, the Debtors conduct sales promotions and distribute coupons or other discounted offers (including Groupons) to attract business (the "<u>Sales Promotions and Coupons</u>"). The Sales Promotions and Coupons include, among other things, offers to discount a future purchase. To preserve the goodwill of their

customer base, the Debtors seek authorization, but not the obligation, to honor these Sales Promotions and Coupons, subject to any modification by the Debtors in their discretion.

## RELIEF REQUESTED

10. The Debtors request entry of an order, substantially in the form attached as Exhibit A, authorizing the Debtors to (a) honor and pay their Customer Obligations, and (b) maintain their Customer Programs, and renew, modify, terminate, or replace such programs in their discretion.

## BASIS FOR RELIEF

11. It is in the best interests of the Debtors' estates that all prepetition Customer Obligations be satisfied in full, and the Court has the authority under the Bankruptcy Code to permit the Debtors to satisfy such obligations. The Court's authority to approve the satisfaction of prepetition obligations derives from both the Bankruptcy Code and the common law "doctrine of necessity."

### A. Honoring prepetition Customer Obligations will preserve the value of the estates and is therefore in the best interests of creditors.

12. At least four Bankruptcy Code provisions support the satisfaction of prepetition Customer Obligations: (a) under section 503(b)(1), the Court may permit the Debtors to pay any "actual, necessary costs and expenses of preserving the estate"; (b) section 363(b)(1) provides that after notice and a hearing, and based on a "sound business purpose," a debtor may "use, sell, or lease, other than in the ordinary course of business, property of the estate"; (c) section 1107(a) provides a debtor in possession with all rights, powers, and duties of a trustee, which includes maximizing the value of the estate; and (d) section 105(a) permits the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." *See In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 175-76 (D. Del. 1991); *In re Filene's Basement,*

- 5 -

*LLC*, 2014 Bankr. LEXIS 2000, at *39-40 (Bankr. D. Del. Apr. 29, 2014) ("Transactions under § 363 must be based upon the sound business judgment of the debtor or trustee."); *In re Decora Indus.*, 2002 U.S. Dist. LEXIS 27031, at *7-8 (D. Del. May 20, 2002) (a debtor satisfies the requirements of section 363(b)(1) through the "sound exercise of business judgment"); *In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir. 1992).

13. Payment of Customer Obligations is also supported by the "doctrine of necessity." "The 'doctrine of necessity' or 'necessity of payment' doctrine is a general rubric for the proposition that a court can authorize the payment of prepetition claims if such payment is essential to the continued operation of the debtor." *In re Motor Coach Indus. Int'l*, 2009 U.S. Dist. LEXIS 10024, at *7 n.5 (D. Del. Feb. 10, 2009).

14. Courts in this and other districts have consistently and appropriately been reluctant to interfere with corporate decisions "unless it is shown that the bankrupt's decision was one taken in bad faith or in gross abuse of the bankrupt's retained business discretion." *Lubrizol Enters., Inc. v. Richmond Metal Finishers, Inc.*, 756 F.2d 1043, 1047 (4th Cir. 1985). To that end, once a debtor articulates a sound basis for its business decisions, courts generally will not entertain objections to a debtor's conduct. *In re Dura Auto. Sys.*, 2007 Bankr. LEXIS 2764, at *259-60 (Bankr. D. Del. Aug. 15, 2007). In other words, if a debtor's actions satisfy the business judgment rule, those actions will generally be approved. *Id.; see also In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992).

15. Citing a combination of the above-identified Bankruptcy Code provisions and the doctrine of necessity, courts have repeatedly recognized that a debtor may honor prepetition obligations where it is "essential to the continued operation of the business." *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191-92 (Bankr. D. Del. 1994); *In re Ionosphere Clubs, Inc.*, 98

B.R. 174, 176 (Bankr. S.D.N.Y. 1989); *accord In re Just for Feet, Inc.*, 242 B.R. 821, 825 (D. Del. 1999) ("The Supreme Court, the Third Circuit and the District of Delaware all recognize the court's power to authorize payment of pre-petition claims when such payment is necessary for the debtor's survival during chapter 11."); *In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (recognizing that "if payment of a [prepetition] claim . . . is essential to the continued operation of the [debtor] . . ., payment may be authorized . . ."); *In re Friedman's Inc.*, 2011 Bankr. LEXIS 4500, at *7-8 (Bankr. D. Del. Nov. 30, 2011) ("[M]ost courts will allow [the payment of prepetition claims] under the 'doctrine of necessity,' if the debtor establishes that in its business judgment making such payments is critical to the survival of the debtor's business.").

16. The relief requested herein is necessary for the Debtors to maximize the value of their estates. Much of the success and value of the Debtors' businesses are dependent upon brand loyalty, the Debtors' reputation, and confidence of their customers. Continued customer support is essential to the value of the Debtors' businesses, and their ability to maximize the value of those businesses through a sale transaction. The Debtors' failure to honor the Customer Obligations in the ordinary course and without interruption would likely diminish the value of their brand during the critical marketing period, and would thereby detrimentally affect recoveries to creditors.

17. The expenditure of estate funds required to fulfill the Debtors' Customer Obligations is minimal when compared to the benefits accruing to the Debtors from the preservation of their customer relationships. Accordingly, to preserve the value of their estates during the sale process, the Debtors request that they be permitted to continue honoring and paying all Customer Obligations.

18.     Courts in this District regularly have authorized debtors to honor and pay obligations to customers arising prior to the filing of their chapter 11 cases in the ordinary course of business. *See, e.g., In re Quiksilver, Inc.*, No. 15-11880 (BLS) (Docket No. 65) (Bankr. D. Del. Sept. 10, 2015); *In re Old FENM Inc.*, No. 13-12569 (KJC) (Docket No. 53) (Bankr. D. Del. Oct. 1, 2013); and *In re MSD Performance, Inc.*, No. 13-12286 (PJW) (Docket 42) (Bankr. D. Del. Sept. 9, 2013).

**B.     Section 363(c)(1) of the Bankruptcy Code authorizes the Debtors to maintain their Customer Programs and to renew, modify, terminate, or replace such programs in the ordinary course of business.**

19.     As described above, customer support and loyalty is crucial to maximize the value of the Debtors estates. The failure to maintain the Customer Programs in the ordinary course and without interruption would almost certainly cause the Debtors to suffer an irreparable loss of customer support and confidence, possible damage to the brand, and potentially adversely impact the sales process. Therefore, the loss of customers could detrimentally affect the value of the Debtors' estates and the recoveries to creditors.

20.     For the foregoing reasons, the Court should authorize the Debtors to maintain, renew, modify, terminate, or replace, without further Court approval, their Customer Programs.

## REQUESTS FOR IMMEDIATE RELIEF AND WAIVER OF STAY

21.     Pursuant to Rules 6003(b) and 6004(h) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), the Debtors seek (a) immediate entry of an order granting the relief sought herein and (b) a waiver of any stay of the effectiveness of such an order. Bankruptcy Rule 6003(b) provides, in relevant part, that "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant relief regarding . . . a motion to pay all or part of a claim that arose before the filing of the petition." Bankruptcy Rule 6004(h) provides that "[a]n order authorizing

the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." From this, courts have ruled that, where the failure to grant any such requested relief would result in immediate and irreparable harm to the Debtors' estates, the Court may allow the Debtors to pay all or part of a claim that arose before the Petition Date immediately.

22. As set forth above, continuing the Customer Programs is necessary to prevent immediate and irreparable damage to the Debtors' operations and their ability to successfully sell all or a portion of their businesses. Accordingly, the Debtors submit that ample cause exists to justify (a) the immediate entry of an order granting the relief sought herein and (b) a waiver of the 14 day stay imposed by Bankruptcy Rule 6004(h).

## RESERVATION OF RIGHTS

23. Nothing contained herein is intended or shall be construed as: (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any claim on any grounds; (c) a promise to pay any claim; (d) an implication or admission that any particular claim would constitute a claim for a Customer Obligation; or (e) the assumption of any contract.

## NOTICE

24. Notice of this Motion shall be given to (a) the Office of the United States Trustee for the District of Delaware; (b) those creditors holding the 30 largest unsecured claims against the Debtors' estates; (c) Milbank, Tweed, Hadley & McCloy LLP and Fox Rothschild LLP, as counsel to the Committee of Lead Lenders; (d) Covington & Burling LLP, as counsel to Wilmington Trust, National Association, as administrative agent to the Debtors' prepetition secured lenders; (e) Riemer & Braunstein LLP and Ashby & Geddes, P.A., as counsel to the DIP Secured Parties; (f) Kilpatrick Townsend & Stockton LLP; (g) Debevoise & Plimpton LLP, as

counsel to Standard General, L.P.; and (h) the Internal Revenue Service, the Securities and Exchange Commission and any other federal, state or local governmental agency to the extent required by the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") or order of the Court; (i) the Attorney Generals for each state that the Debtors operate; and (j) the Federal Trade Commission Bureau of Consumer Protection. As this Motion is seeking "first day" relief, within two business days of the hearing on this Motion, the Debtors will serve copies of this Motion and any order entered in respect to this Motion as required by Local Rule 9013-1(m). The Debtors submit that no other or further notice need be provided.

## NO PRIOR REQUEST

25. No prior request for the relief sought herein has been made to this Court or any other court.

*[Remainder of Page Intentionally Left Blank]*

DOCS_DE:210105.12 03635/001

WHEREFORE, the Debtors respectfully request that the Court enter an order substantially in the form attached hereto as <u>Exhibit A</u> and for such other and further relief as may be appropriate.

Dated: November 14, 2016  
Wilmington, Delaware

PACHULSKI STANG ZIEHL & JONES LLP

/s/ Laura Davis Jones
_____
Laura Davis Jones (DE Bar No. 2436)  
James E. O'Neill (DE Bar No. 4042)  
Joseph M. Mulvihill (DE Bar No. 6061)  
919 N. Market Street, 17th Floor  
P.O. Box 8705  
Wilmington, DE 19899-8705 (Courier 19801)  
Telephone: (302) 652-4100  
Facsimile:  (302) 652-4400  
Email:      ljones@pszjlaw.com  
            joneill@pszjlaw.com  
            jmulvihill@pszjlaw.com

and

JONES DAY  
Erin N. Brady  
555 South Flower Street, 50th Floor  
Los Angeles, CA 90071  
Telephone: (213) 489-3939  
Facsimile:  (213) 243-2539  
Email:      enbrady@jonesday.com

and

Scott J. Greenberg  
Michael J. Cohen  
250 Vesey Street  
New York, NY 10281  
Telephone: (212) 326-3939  
Facsimile:  (212) 755-7306  
Email:      sgreenberg@jonesday.com  
            mcohen@jonesday.com

Proposed Co-Counsel for the Debtors  
and Debtors in Possession