## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| AMERICAN APPAREL, LLC, *et al.*,[1] | : | Case No. 16-12551 (BLS) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | **Re: Docket Nos. 17, 114 & 299** |

---

## FINAL ORDER (I) AUTHORIZING THE DEBTORS TO UTILIZE CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES AND (III) GRANTING RELATED RELIEF

Upon the *Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Postpetition Senior Secured Superpriority Financing Pursuant to 11 U.S.C. §§ 361, 362, 363(c), 363(e), 364(c), 364(d)(1), 364(e) and 507 and (B) Utilize Cash Collateral, (II) Granting Priming Liens, Priority Liens and Superpriority Claims to the DIP Secured Parties, (III) Granting Adequate Protection to Prepetition Secured Parties, (IV) Scheduling a Final Hearing Pursuant to Rules 4001(b) and (c) of the Bankruptcy Rules and (V) Granting Related Relief,* dated November 14, 2016 [Docket No. 17] (the "Motion") of American Apparel, LLC ("American Apparel") and its affiliated debtors, as debtors and debtors in possession (collectively, the "Debtors") in the above-referenced chapter 11 cases (the "Cases"), for entry of interim and final orders, including a final order with respect to the UCC-Prepetition Secured Lender Matters (defined below), under sections 105, 361, 362, 363(c), 363(e), 364(c), 364(d)(1), 364(e) and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (as amended, the "Bankruptcy Code"), Rules 2002, 4001 and 9014 of the Federal Rules of

---

[1]       The Debtors are the following six entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): American Apparel, LLC (0601); American Apparel (USA), LLC (8940); American Apparel Retail, Inc. (7829); American Apparel Dyeing & Finishing, Inc. (0324); KCL Knitting, LLC (9518); and Fresh Air Freight, Inc. (3870). The address of each of the Debtors is 747 Warehouse Street, Los Angeles, California 90021.

Bankruptcy Procedure (as amended, the "Bankruptcy Rules") and Rule 4001-2 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), seeking authorization for the Debtors and certain related parties to, *inter alia*: (a) obtain senior secured post-petition financing in an aggregate principal amount not to exceed $30,000,000 (the "DIP Credit Facility"), (b) grant first priority, priming security interests, liens and superpriority claims, (c) use of Cash Collateral (as such term is defined in section 363(a) of the Bankruptcy Code), (d) provide adequate protection, (e) modification of the automatic stay imposed under section 362 of the Bankruptcy Code, and (f) granting certain related relief, all as set forth in the Motion; and the Court having held an interim hearing in connection with the relief requested in the Motion on November 15, 2016 (the "Interim Hearing"); and the Court having entered the *Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Senior Secured Superpriority Financing Pursuant to 11 U.S.C. §§ 361, 362, 363(c), 363(e), 364(c), 364(d)(1), 364(e) And 507 and (B) Utilize Cash Collateral, (II) Granting Priming Liens, Priority Liens and Superpriority Claims to the DIP Secured Parties, (III) Granting Adequate Protection to Prepetition Secured Parties, (IV) Scheduling a Final Hearing Pursuant to Rules 4001(b) and (c) of the Bankruptcy Rules And (V) Granting Related Relief*, on November 17, 2016 [Docket No. 114]; and the Court having held a final hearing in connection with certain of the relief requested in the Motion on December 12, 2016 (the "Final Hearing"); and the Court having entered the *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Senior Secured Superpriority Financing Pursuant to 11 U.S.C. §§ 361, 362, 363(c), 363(e), 364(c), 364(d)(1), 364(e) and 507 and (B) Utilize Cash Collateral, (II) Granting Priming Liens, Priority Liens and Superpriority Claims to the DIP Secured Parties, (III) Granting Adequate Protection to Prepetition Secured Parties, and (IV) Granting Related Relief*, on

December 12, 2016 [Docket No. 299] (the "<u>Final Order</u>"),[2] which Final Order held in abeyance the UCC-Prepetition Secured Lender Matters until the Final Cash Collateral Hearing; and the Court having held the Final Cash Collateral Hearing on January 12, 2017; and the Court having considered the Motion, the declaration of Mark Weinsten in support of the Debtors' first day motions and orders, the declarations of Saul Burian, Mark Weinsten and Beth Vogel in support of the Motion, and all pleadings related thereto, including the record made at the Interim Hearing, the Final Hearing and the Final Cash Collateral Hearing; and after due deliberation and consideration, and good and sufficient cause appearing therefor:

**THE COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS:[3]**

A.      On November 14, 2016 (the "<u>Petition Date</u>"), each Debtor filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are continuing to operate their respective businesses and manage their respective properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Cases are being jointly administered for procedural purposes only under case number 16-12551 (BLS).  No trustee or examiner has been appointed in the Cases.

B.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      The Final Cash Collateral Hearing is being held pursuant to the authorization of Bankruptcy Rule 2002, 4001(b), (c), and (d) and Rule 9014, and the Local Rules of the

---

[2]      Capitalized terms used herein and not otherwise defined shall have the meanings ascribed thereto in the Final Order and/or the DIP Credit Agreement, as the context makes applicable.

[3]      The findings and conclusions set forth in this Final Cash Collateral Order constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

Bankruptcy Court.   The Debtors have provided notice of the Motion and the Final Cash Collateral Hearing by facsimile, electronic mail or overnight mail to:   (i) the United States Trustee for Region 3, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn: Jane Leamy and Natalie Cox; (ii) counsel to the Committee, Cooley LLP, 1114 Avenue of the Americas, New York, NY 10036, Attn: Cathy Hershcopf, Seth Van Aalten and Michael Klein, and Bayard, P.A., 222 Delaware Avenue, Suite 900, Wilmington, DE 19801, Attn: Justin R. Alberto, Evan T. Miller and Gregory J. Flasser; (iii) the Internal Revenue Service, Centralized Insolvency Operations, 11601 Roosevelt Boulevard, Mail Drop N781, Philadelphia, Pennsylvania 19255; (iv) all relevant state and local taxing authorities; (v) the United States Attorney General, U.S. Department of Justice, 950 Pennsylvania Avenue NW, Washington, DC 20530; (vi) the Securities Exchange Commission, Attn:  General Counsel, 100 F Street NE, Washington, DC 20549; (vii) the parties listed in the consolidated list of thirty (30) largest unsecured creditors filed by the Debtors in the Cases; (viii) counsel to the DIP Secured Parties, Riemer & Braunstein LLP, Times Square Tower, Seven Times Square, Suite 2506, New York, New York 10036, Attn: Steven E. Fox, and Three Center Plaza, 6th Floor, Boston, Massachusetts 02108, Attn: Donald Rothman and Alexander Rheaume, and Ashby & Geddes, P.A., 500 Delaware Avenue, P.O. Box 1150, Wilmington, DE 19899, Attn:  Gregory Taylor; (ix) counsel to the Prepetition Agent, Covington & Burling LLP, 620 Eighth Avenue, New York, New York, 10018, Attn: Ronald Hewitt, and Pepper Hamilton LLP, Hercules Plaza, Suite 5100, 1313 Market Street, P.O. Box 1709, Wilmington, Delaware 19899, Attn: David Fournier; (x) counsel to the Committee of Lead Lenders, Milbank, Tweed, Hadley & McCloy LLP, 28 Liberty Street, New York, New York 10005, Attn: Gerard Uzzi, and Fox Rothschild LLP, 919 North Market Street, Suite 300, Wilmington, Delaware 19801, Attn: Jeffrey M. Schlerf; (xi) counsel to

Standard General L.P. and its affiliates ("Standard General"), Debevoise & Plimpton LLP, 919

Third Avenue, New York, New York 10022, Attn: M. Natasha Labovitz, and Young Conaway

Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801,

Attn: Edmon L. Morton; (xii) all entities known or reasonably believed to have asserted a

security interest or lien against the Debtors; and (xiii) all parties having filed requests for notice

in the Cases (the parties set forth in the preceding clauses (i) through (xiii), collectively, the

"Notice Parties"). Given the nature of the relief sought in the Motion, the Court concludes that

no further notice is necessary for entry of this Final Cash Collateral Order.

        D.     On November 22, 2016, the U.S. Trustee appointed the Committee

pursuant to section 1102 of the Bankruptcy Code.

        E.     The Debtors' Stipulations contained in sub-paragraph E(5) of the Final

Order are modified by replacing such sub-paragraph in its entirety, as follows:

        "(5)     The liens and security interests of the Prepetition Secured Parties

in the Prepetition Collateral, including the Cash Collateral, as security for the

Prepetition Obligations, constitute valid, binding, enforceable and perfected liens

and security interests and are not subject to avoidance, disallowance or

subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law

(except insofar as such liens are subordinated to the DIP Liens and the Carve-Out

in accordance with the provisions of the Interim Order, the Final Order and the

Final Cash Collateral Order). The Debtors further admit, acknowledge and agree

that (a) the Prepetition Obligations constitute legal, valid and binding obligations

of each of the Debtors, (b) no offsets, defenses or counterclaims to the Prepetition

Obligations exist and (c) no portion of the Prepetition Obligations is subject to

avoidance, disallowance, reduction, objection, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law."

F.      The Debtors have an immediate and critical need to use Cash Collateral to, among other things, finance their business operations, make payroll, satisfy other working capital and operational needs and fund the administration and prosecution of the Cases.  The Debtors' access to sufficient working capital and liquidity through the use of Cash Collateral under the terms of the Interim Order, the Final Order and this Final Cash Collateral Order is vital to the preservation and maintenance of the value of the Debtors' estates during the pendency of the Cases. Consequently, without the ability to continue to use Cash Collateral, to the extent authorized pursuant to the Interim Order, the Final Order and this Final Cash Collateral Order, the Debtors and their estates will suffer immediate and irreparable harm.

G.      Contemporaneously with the entry of this Final Cash Collateral Order, the Debtors, the Committee, certain Prepetition Secured Lenders (the "Committee of Lead Lenders") and the litigation trustee (the "Litigation Trustee") appointed in the jointly administered chapter 11 cases of the Debtors' predecessors-in-interest currently pending before the Court under Case No. 15-12055 (BLS) (such case, the "Prior Case") have entered into, and have sought entry of an order of the Court approving, a settlement pursuant to Bankruptcy Rule 9019 with respect to, among other things, the UCC-Prepetition Secured Lender Matters and certain other disputes related to the use of Cash Collateral, the terms and conditions of which are set forth in the settlement terms (the "Settlement") attached as Exhibit 1 to the proposed order approving the *Joint Motion of the Debtors and the Official Committee of Unsecured Creditors for Entry of an Order Approving Settlement*, filed on January 4, 2017 [Docket No. 428].

H.     Solely on the terms and conditions set forth in the Interim Order, the Final Order and this Final Cash Collateral Order and in the DIP Credit Documents and in accordance with the Prepetition Loan Documents, the majority of the Prepetition Secured Lenders, which constitute the Required Lenders (as defined in the Prepetition Credit Agreement), are prepared to consent to the Debtors' use of the Prepetition Collateral (including the Cash Collateral) on a final basis in accordance with this Final Cash Collateral Order, provided, that the Court authorizes the Debtors, pursuant to sections 361, 363 and 364(d) of the Bankruptcy Code, to grant to the Prepetition Agent, for the benefit of the Prepetition Secured Parties, as and for adequate protection, but each subject to the DIP Liens, the DIP Superpriority Claim and the Carve-Out, (1) a security interest in and lien and mortgage upon the DIP Collateral (as defined hereinafter) in favor of the Prepetition Secured Parties (the "Adequate Protection Liens"), (2) superpriority administrative expense claims under section 507(b) of the Bankruptcy Code (collectively, the "Adequate Protection Priority Claims") and (3) other forms of adequate protection set forth in the Interim Order, the Final Order and herein; provided, further, however, that nothing in this consent to use of Cash Collateral shall limit the reservations of rights set forth in paragraph 38 of the Final Order.

I.     Good cause has been shown for immediate entry of this Final Cash Collateral Order pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2) and Local Rule 4001-2 and the waiver of any applicable stay (including under Bankruptcy Rule 6004) in favor of the immediate effectiveness of this Final Cash Collateral Order.  In particular, the authorization granted herein for the Debtors to continue using Cash Collateral is necessary, essential and appropriate to avoid immediate and irreparable harm to the Debtors and their estates.  Entry of this Final Cash Collateral Order is in the best interest of the Debtors, their estates and creditors.  The terms of the

Debtors' continued use of Cash Collateral are fair and reasonable under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and are supported by reasonably equivalent value and fair consideration.

J.      The Debtors, the DIP Secured Parties, the Prepetition Secured Parties and the Committee have negotiated the terms and conditions of the Debtors' continued use of Cash Collateral, the Interim Order, the Final Order and this Final Cash Collateral Order, in each case, in good faith and at arm's length.

K.      Based on the foregoing, and upon the record made before this Court at the Interim Hearing, the Final Hearing and the Final Cash Collateral Hearing, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.      *Approval of Motion*.  The Motion is granted with respect to the Debtors' use of Cash Collateral and the UCC-Prepetition Secured Lender Matters on a final basis on the terms and conditions set forth in this Final Cash Collateral Order.  Any objections or responses to the relief requested in the Motion that have not been previously resolved or withdrawn, waived or settled are hereby overruled on the merits and denied with prejudice.  This Final Cash Collateral Order shall become effective immediately upon its entry.

2.      *Effect of this Final Cash Collateral Order on the Final Order*.  Except as expressly modified herein, all the provisions of the Final Order remain in full force and effect. For the avoidance of doubt, the relief granted herein shall not affect the relief granted in the Final Order on a final basis with respect to the DIP Secured Parties, and nothing herein shall operate to reverse, modify, vacate or stay the provisions of the Final Order with respect to the rights of the DIP Secured Parties under the Final Order, including, but not limited to, as concerns the DIP Obligations, DIP Liens, DIP Superpriority Claims and/or the provisions of paragraph 21 of the

Final Order.

        3.      _Use of Cash Collateral; Budget_.

        A.      Subject to paragraph 3(B) of this Final Cash Collateral Order, the Debtors are hereby authorized to use the Cash Collateral on a final basis to (i) pay the DIP Fees and Expenses; (ii) pay the fees and expenses of Professional Persons; and (iii) to make disbursements in the ordinary course of the Debtors' business and pay for the costs of administering these Cases in accordance with the Budget (as defined in the DIP Credit Agreement and as attached as Exhibit "A" hereto and incorporated herein by reference), in each case, pursuant to the terms, conditions, and procedures set forth in the DIP Credit Agreement, the Interim Order, the Final Order and this Final Cash Collateral Order, it being understood that in no event shall the Budget be construed as a cap on the payment of the items set forth in (i) and (ii) of this paragraph. This paragraph 3(A) supersedes the first sentence of paragraph 3 of the Final Order. Any modification, extension, amendment or update of the Budget shall be in form and substance reasonably acceptable to and subject to the prior written approval of the DIP Agent, and, following the indefeasible repayment in full in cash of the DIP Obligations, the Committee of Lead Lenders in consultation with Standard General.

        B.      Upon the effective date of the Settlement (the "Settlement Effective Date"), all allowed administrative expense claims asserted against the Debtors' estates (other than allowed professional fees and expenses for Professional Persons other than the Professional Persons of the Committee (the "Committee Professionals") in excess of the Budget) shall be payable from the Settlement Escrow (as defined in the Settlement) and not from the Cash Collateral; provided, that amounts (i) that are identified in the Settlement as payable from the Cash Collateral (after accounting for the funding of the Escrows (as defined in the Settlement) or

(ii) provided for in the Budget appended hereto as Exhibit "A" (which shall not be modified after the Settlement Effective Date except as provided in this Final Cash Collateral Order), including the Adequate Protection Payments to the Prepetition Agent, in each case, shall be payable from the Cash Collateral (after accounting for the funding of the Escrows).  For the avoidance of doubt, and anything in the Settlement to the contrary notwithstanding, the funding of the Escrows shall only occur following the indefeasible repayment in full in cash of the DIP Obligations.

C.     Notwithstanding anything herein or in the Final Order, the allowed fees and expenses of the Committee Professionals accruing on and after January 4, 2017 shall not exceed $500,000 (the "Post-Effective Date Cap"), and the Committee Professionals shall not seek payment of any fees or expenses in excess of the Post-Effective Date Cap from the DIP Collateral, the Cash Collateral or the Carve-Out; provided, however, that the Post-Effective Date Cap shall not apply to any fees and expenses incurred by Committee Professionals in connection with the preparation and prosecution of the motion seeking approval of the Settlement.  For the avoidance of doubt, nothing herein is intended to or shall operate to expand or increase the DIP Lenders' obligations in respect of the Carve-Out as provided in the Final Order.

4.     *Continuation of Prepetition Liens*.  Until (a) the Borrowers and the Guarantors have paid in full all Prepetition Obligations (in each case, other than unasserted contingent indemnification obligations), (b) all objections and challenges to (i) the liens and security interests of the Prepetition Secured Parties (including, without limitation, liens granted for adequate protection purposes) and (ii) the Prepetition Obligations have been waived, denied or barred, and (c) all of the Debtors' Stipulations contained in paragraph E of the Final Order (as

modified by this Final Cash Collateral Order) have become binding upon their estates and parties in interest in accordance with paragraphs 15 and 30, respectively, of the Final Order (each as modified in this Final Cash Collateral Order), all liens and security interests of the Prepetition Secured Parties (including, without limitation, liens granted for adequate protection purposes) shall remain valid and enforceable with the same continuing priority as described in the Interim Order, Final Order and herein.

5.    *Adequate Protection for Prepetition Secured Parties*.    Without in any way limiting the Prepetition Secured Parties' respective rights under the Bankruptcy Code, including, without limitation, section 552 of the Bankruptcy Code, the Prepetition Secured Parties are entitled, pursuant to sections 361, 363(e) and 364(d)(1) of the Bankruptcy Code, to adequate protection of their interest in their respective Cash Collateral for the sale, lease or use by the Debtors of the Prepetition Collateral, and the priming of the Prepetition Liens, in each case and as applicable, as set forth herein and in the Interim Order and the Final Order, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code.  Subject to paragraph 21 of the Final Order, the Prepetition Secured Parties shall receive and retain all rights and entitlements that a secured creditor that did not consent to the use of its cash collateral or other property or sought relief from the automatic stay and had such request been overruled would otherwise receive and/or retain.  In addition, the Prepetition Secured Parties are hereby granted the following forms of adequate protection, which, collectively, under the circumstances, the Bankruptcy Court finds are reasonable and sufficient to protect the interests of the Prepetition Secured Parties:

A.    Effective and perfected upon the date of entry of the Interim Order and without the necessity of the execution of any mortgages, security agreements, pledge

agreements, financing statements or other agreements, the Adequate Protection Liens and the Adequate Protection Priority Claims shall secure the payment of an amount equal to the diminution in the value of the Prepetition Secured Parties' interests in the Prepetition Collateral from and after the Petition Date, including, without limitation, any such diminution resulting from:   (A) the use by the Borrowers of such collateral and cash and property constituting proceeds of such collateral, (B) the imposition of the DIP Liens, which will prime certain of the Prepetition Liens, (C) the Carve-Out, (D) the imposition of the automatic stay pursuant to section 362(a) of the Bankruptcy Code and/or (E) any other reason (including the Adequate Protection Payments (as defined below), the "Adequate Protection Obligations"); provided, that the Adequate Protection Liens of the Prepetition Agent and the Prepetition Secured Lenders that provided IP Additional Loans shall attach to the portion of the Excluded Interests the net proceeds of which are subject to a payment entitlement in favor of such Prepetition Secured Lenders (and only to such extent), subject to paragraphs 30 (as modified herein) and 38 of the Final Order.

        B.     The priority of the Adequate Protection Obligations shall, subject only to (i) the DIP Liens, (ii) the DIP Superpriority Claims, (iii) any Existing Senior Liens and (iv) the Carve-Out, give effect to the Prepetition Payment Priority established in Prepetition Credit Agreement, subject to any successful Challenge pursuant to paragraph 30 of the Final Order (as modified herein).

        C.     As additional adequate protection, and subject to the Budget, the Debtors shall reimburse to the Prepetition Agent on a monthly basis the reasonable and documented fees and out-of-pocket expenses for its services as administrative agent and collateral agent, and the fees and out-of-pocket expenses of one non-Delaware legal counsel and one Delaware legal

counsel to the Prepetition Agent (all such payments, the "Adequate Protection Payments"). None of the fees and expenses payable pursuant to this paragraph shall be subject to separate approval by this Court (but this Court shall resolve any dispute as to the reasonableness of any such fees and expenses) or United States Trustee guidelines, and no recipient of any such payment shall be required to file any interim or final fee application with the Court with respect thereto; provided, however, that the Prepetition Agent shall submit copies of its professional fee invoices to the Debtors, the Committee of Lead Lenders, Standard General, the U.S. Trustee and the Committee; and the Debtors, the Committee of Lead Lenders, Standard General, the U.S. Trustee and the Committee shall have ten (10) business days from receipt thereof to object in writing to the reasonableness of such invoices; to the extent that the Debtors, the Committee of Lead Lenders, Standard General, the U.S. Trustee or the Committee so objects to any such invoices, payment of the allegedly unreasonable portion of such invoices will be subject to review by the Court; provided, further, however, that such invoices may be redacted to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or any benefits of the attorney work product doctrine. The Debtors shall pay the fees and expenses provided for in this paragraph promptly after the foregoing ten (10) business day period.

This paragraph 5 and sub-paragraphs (A), (B) and (C) hereof supersede paragraph 11 of the Final Order and sub-paragraphs (A), (B) and (C) thereof in their entirety.

6.    *Automatic Effectiveness of Liens.*  Except as expressly set forth herein and in the Final Order (including, without limitation, with respect to the Carve-Out), the liens granted to the Prepetition Secured Parties pursuant to this Final Cash Collateral Order shall not be (a) subject to

any lien that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code or (b) subordinated to or made *pari passu* with any other lien under sections 363 and 364 of the Bankruptcy Code other than as explicitly provided herein.  The Adequate Protection Liens shall not be subject to challenge and shall automatically attach and become valid, perfected, enforceable, non-avoidable and effective by operation of law as of the Petition Date without any further action by the Debtors or the Prepetition Secured Parties, and without the necessity of execution by the Debtors, or the filing or recordation, of any financing statements, guaranty agreements, security agreements, vehicle lien applications, mortgages, filings with the U.S. Patent and Trademark Office, control agreements, or other documents or the taking of any other actions. Any of the Prepetition Secured Parties, in their respective discretion, may file a photocopy of this Final Cash Collateral Order as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which any Debtor has real or personal property, and in such event, the subject filing or recording officer shall be authorized to file or record such copy of this Final Cash Collateral Order.

7.    *Investigation of Prepetition Liens.*    Upon the occurrence of the Settlement Effective Date, the Committee and the Litigation Trustee, shall not assert or prosecute, and no portion of the DIP Credit Facility, the DIP Collateral, the Prepetition Collateral, the Cash Collateral, or the Carve-Out, and no disbursements set forth in the Budget, shall be used for the payment of professional fees, disbursements, costs or expenses incurred by the Committee and/or the Litigation Trustee in connection with (a) asserting or prosecuting any claims or causes of action against any of the Consenting Prepetition Secured Lenders (as defined in the Settlement) or the Prepetition Agent (on behalf of itself and each of the Consenting Prepetition Secured

Lenders) or any of the DIP Secured Parties, (b) challenging, avoiding, setting aside, or subordinating, in whole or in part, or raising any defenses to the Prepetition Obligations of the Consenting Prepetition Secured Lenders or the Prepetition Agent (on behalf of itself and each of the Consenting Prepetition Secured Lenders) or the DIP Obligations, or the DIP Liens and/or Liens in the Prepetition Collateral held by the Prepetition Agent for the benefit of the Consenting Prepetition Secured Lenders, or (c) preventing, hindering, or delaying, whether directly or indirectly, the DIP Agent's assertion or enforcement of its liens and security interests or its efforts to realize upon any DIP Collateral, the DIP Superpriority Claims or the DIP Agent's efforts to enforce any other rights and remedies under the DIP Credit Documents and/or applicable law. Notwithstanding the foregoing, the Debtors shall be permitted to contest the occurrence and/or continuance of a Cash Collateral Termination Event in accordance with the terms and conditions of the Final Order and this Final Cash Collateral Order.

8.    *Section 506(c) and 552(b) Waivers*.    The Debtors (on behalf of themselves and their estates or otherwise) hereby irrevocably waive, and shall be prohibited from asserting, (i) any surcharge claim under section 506(c) of the Bankruptcy Code or otherwise for any costs and expenses incurred in connection with the preservation, protection or enhancement of, or realization by any of the Prepetition Secured Lenders upon, the portion of the Prepetition Collateral held for their respective benefit (the "Secured Lender-Related Collateral"; the Prepetition Liens thereon, the "Secured Lender-Related Liens"), and (ii) the "equities of the case" exception under section 552(b) of the Bankruptcy Code with respect to the proceeds, product, offspring or profits of any of the Secured Lender-Related Collateral or as against any of the Prepetition Secured Lenders or the Secured Lender-Related Liens.

9.     _Binding Nature of Order; Order Controls_.  The provisions of this Final Cash Collateral Order shall be binding upon the Debtors and their respective successors and assigns (including, without limitation, any trustee or other fiduciary hereafter elected or appointed for or on behalf of any Debtor's estate or with respect to its property).  In the event of any inconsistency between the provisions of this Final Cash Collateral Order, the Interim Order, the Final Order or any of the DIP Credit Documents with respect to the use of Cash Collateral of the DIP Agent and DIP Lenders, the provisions of the Final Order shall govern.  In the event of any inconsistency between the provisions of this Final Cash Collateral Order, the Interim Order, or the Final Order solely with respect to the use of Cash Collateral of the Prepetition Secured Parties and the UCC-Prepetition Secured Lender Matters, the provisions of this Final Cash Collateral Order shall govern.

10.     _Survival of Order_.  The provisions of this Final Cash Collateral Order and any actions taken pursuant hereto (a) shall survive the entry of any order:  (i) confirming any plan of reorganization in any of the Cases; (ii) converting any of the Cases to a case under chapter 7 of the Bankruptcy Code; or (iii) dismissing any of the Cases and (b) shall continue in full force and effect notwithstanding the entry of any such order, and the claims, liens, and security interests granted pursuant to the Interim Order, the Final Order and this Final Cash Collateral Order shall maintain their priority as provided by the Interim Order, the Final Order and this Final Cash Collateral Order until (i) all of the DIP Obligations are paid in full in cash and discharged in accordance with the terms of the DIP Credit Agreement and (ii) all of the Adequate Protection Obligations are paid in full in cash or otherwise satisfied pursuant to plan of reorganization confirmed in the Cases in accordance with the Bankruptcy Code.  Neither the DIP Obligations nor the Adequate Protection Obligations shall be discharged by the entry of any order confirming

any plan of reorganization in any of the Cases, and the Debtors shall, and shall be deemed to, waive any such discharge pursuant to section 1141(d)(4) of the Bankruptcy Code.

11.    _Protection under Section 364(e) of the Bankruptcy Code._    If any or all of the provisions of this Final Cash Collateral Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacation or stay shall not affect (i) the validity of any DIP Obligations or Adequate Protection Obligations owing to the DIP Secured Parties and the Prepetition Secured Parties, respectively, incurred prior to the actual receipt by the DIP Agent or Prepetition Agent (as applicable) of written notice of the effective date of such reversal, modification, vacatur or stay, or (ii) the validity or enforceability of any claim, lien, security interest or priority authorized or created hereby or pursuant to the DIP Credit Documents with respect to any DIP Obligations or adequate protection rights of the Prepetition Secured Parties. Notwithstanding any such reversal, modification, vacatur or stay, any use of Cash Collateral or the incurrence of DIP Obligations or adequate protection rights of the Prepetition Secured Parties prior to the actual receipt by the DIP Agent and the Prepetition Agent, as applicable, of written notice of the effective date of such reversal, modification, vacatur or stay, shall be governed in all respects by the provisions of the Final Order or this Final Cash Collateral Order (as applicable), and the DIP Secured Parties and the Prepetition Secured Parties shall be entitled to all of the rights, remedies, protections and benefits granted under section 364(e) of the Bankruptcy Code, the Interim Order, the Final Order, this Final Cash Collateral Order and the DIP Credit Documents with respect to all uses of Cash Collateral and the incurrence of DIP Obligations and the Adequate Protection Obligations.

12.      _Stipulations Regarding Prepetition Obligations and Prepetition Liens Binding on Parties in Interest_.

A.      Paragraph 30 of the Final Order shall be modified in its entirety, as follows:

"The Debtors' Stipulations shall be binding on the Debtors' estates and all parties in interest, including, without limitation, the Committee and the Litigation Trustee, unless (a) any party in interest (other than any of the Debtors and, from and after the Settlement Effective Date and only as against the Consenting Prepetition Secured Lenders (as defined in the Final Cash Collateral Order), the Committee and the Litigation Trustee) with standing and requisite authority, including Standard General L.P. and its affiliates, has timely commenced a contested matter or adversary proceeding (subject to the limitations set forth in paragraph 15 hereof) (a "Challenge") challenging the amount, validity or enforceability of the Prepetition Obligations, or the perfection or priority of the Prepetition Liens, or otherwise asserting any objections, claims or causes of action on behalf of the Debtors' estates against the Prepetition Agent or the Prepetition Secured Lenders relating to the Prepetition Obligations or the Prepetition Liens no later than the earlier of the date that is (X) seventy-five (75) days after the Petition Date or (Y) sixty (60) days after the appointment of the Committee (the period ending on such date, the "Challenge Period") and (b) to the extent the Court rules in favor of the plaintiff in any such timely and properly filed Challenge.  If no such Challenge is timely commenced as of such date then, without further order of the Court, (x) the claims, liens and security interests of

the Prepetition Secured Parties shall, without further order of the Court, be deemed to be finally allowed for all purposes in the Cases and any subsequent chapter 7 cases and shall not be subject to challenge or objection by any party in interest as to validity, priority, amount or otherwise, and (y) without further order of the Court, the Debtors and their estates shall be deemed to have released any and all claims or causes of action against Prepetition Secured Parties with respect to the Prepetition Loan Documents or any related transactions. Notwithstanding anything to the contrary herein, if no Challenge is timely commenced, the Debtors' Stipulations shall be binding on the Debtors' estates, the Committee and all parties in interest. If a Challenge is timely commenced, the Debtors' Stipulations shall be binding on the Debtors' estates and all parties in interest except to the extent such stipulations are specifically challenged in such Challenge as and when originally filed (ignoring any relation back principles). To the extent a Challenge is withdrawn, denied or overruled, the Debtors' Stipulations specifically challenged in such Challenge also shall be binding on the Debtors' estates and all parties in interest. For the avoidance of doubt, any trustee appointed or elected in these Cases shall, until the expiration of the period provided herein for asserting Challenges, and thereafter for the duration of any adversary proceeding or contested matter commenced pursuant to this paragraph (whether commenced by such trustee or commenced by any other party in interest on behalf of the Debtors' estates), be deemed to be a party other than the Debtors and shall not, for purposes of such adversary proceeding or contested matter, be bound by the acknowledgments, admissions, confirmations and stipulations of the

Debtors in the Interim Order, the Final Order and the Final Cash Collateral Order."

B.    Notwithstanding paragraph 30 of the Final Order (as modified herein), upon the Settlement Effective Date and without further order of the Court, (i) the Committee of Lead Lenders, its members, any other Consenting Prepetition Secured Lenders, the Prepetition Agent (on behalf of itself and each of the Consenting Prepetition Secured Lenders) and each of their respective Representatives (as defined in the Settlement) are hereby released from and shall not be subject to any Challenge by the Committee or the Litigation Trustee, (ii) the Debtors' Stipulations as to the Committee of Lead Lenders, its members, any other Consenting Prepetition Secured Lenders, the Prepetition Agent (on behalf of itself and each of the Consenting Prepetition Secured Lenders) and each of their respective Representatives shall be and hereby are binding on the Committee, the Litigation Trustee, and each of their respective successors and assigns, (iii) the Committee, the Litigation Trustee, the Debtors and their estates, and each of their respective successors and assigns shall be deemed to have released any and all claims or causes of action against the Committee of Lead Lenders, its members, any other Consenting Prepetition Secured Lenders, the Prepetition Agent (on behalf of itself and each of the Consenting Prepetition Secured Lenders) and each of their respective Representatives, including without limitation any claims and causes of action with respect to the Prepetition Loan Documents, their interests in the Debtors' estates or any related actions or transactions, and (iv) the Challenge Period applicable to a Challenge by the Committee or the Litigation Trustee against a party other than the Consenting Prepetition Secured Lenders and the Prepetition Agent (on behalf of itself and each of the Consenting Prepetition Secured Lenders) shall have been tolled during the period commencing on December 12, 2016 through and including January 12,

2017. For the avoidance of doubt, nothing in this Final Cash Collateral Order shall waive or release any right of Standard General to, (a) solely as it relates to Standard General, contest the amount, validity, priority or enforceability of the liens and claims of the Consenting Prepetition Secured Lenders and the Prepetition Agent through assertion of direct claims of Standard General, including recharacterization, equitable subordination or breach of contract claims, or (b) bring any other Challenges or pursue other claims or causes of action (in each case on behalf of itself but not on behalf of the Debtors or their estates) against the Consenting Prepetition Secured Lenders and the Prepetition Agent, provided that any action referenced in (a) or (b) is subject to the limitations set forth in the Final Order and must be consistent with the procedures for bringing Challenges set forth in the Final Order, if applicable.

13.    *No Marshaling*. None of the Consenting Prepetition Secured Lenders shall be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Prepetition Collateral unless consented to by the Prepetition Agent (at the direction of the Required Lenders).

14.    *Retention of Jurisdiction*.    This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and enforcement of the Interim Order, the Final Order and this Final Cash Collateral Order.

15.    *Preservation of Rights of Standard General and the Prepetition Secured Parties*. For the avoidance of doubt, notwithstanding any other provision of this Final Cash Collateral Order (including paragraph 9 above), nothing in this Final Cash Collateral Order shall affect or prejudice the (a) preservation of rights of Standard General and the other Prepetition Secured Parties in paragraph 38 of the Final Order, including the rights as between and among Standard General and the other Prepetition Secured Parties with respect to (i) the allocation of proceeds

from the sale or other disposition of Prepetition Collateral, (ii) the allocation of expenses with respect to the sale or other disposition of Prepetition Collateral, and (iii) the enforceability, priority and validity of the Prepetition Liens and Prepetition Obligations or (b) the rights of Standard General and the Consenting Prepetition Secured Lenders to make any arguments as to how the Court should allocate the Settlement, including all costs and expenses associated therewith, (i) among the Debtors' assets or (ii) as between Standard General and the Consenting Prepetition Secured Lenders based upon the relative benefits (if any) conferred upon them by the Settlement.

Dated: January 12, 2017

The Honorable Brendan L. Shannon
Chief United States Bankruptcy Court Judge