# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>APP WINDDOWN, LLC, et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 16-12551 (BLS)<br><br>Jointly Administered<br><br>Objection Deadline: July 11, 2018 at 12:00 p.m. (Extended by Agreement)<br>Hearing: July 17, 2018 at 10:00 a.m.<br><br>Related to Docket Nos. 1762, 1746, 1747 |

## OBJECTION OF THE CHUBB COMPANIES TO THE DISCLOSURE STATEMENT FOR JOINT PLAN OF LIQUIDATION PROPOSED BY THE DEBTORS AND DEBTORS IN POSSESSION

Chubb Custom Insurance Company, ACE American Insurance Company, ACE Property and Casualty Insurance Company, Westchester Fire Insurance Company and Indemnity Insurance Company of North America (and together with each of their affiliates and successors, the "Chubb Companies"), by and through their undersigned counsel, hereby object (the "Objection") to the Disclosure Statement for Joint Plan of Liquidation Proposed by the Debtors and Debtors in Possession [Docket No. 1747] (the "Disclosure Statement") and in support of the Objection, the Chubb Companies respectfully state as follows:

## BACKGROUND

A. **The Bankruptcy Case**

1. On November 14, 2016 (the "Petition Date"), APP Winddown, LLC (f/k/a American Apparel LLC) and certain of its affiliates (collectively, the "Debtors") each filed a

---

[1] The Debtors are the following six entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): APP Winddown, LLC (f/k/a American Apparel, LLC) (0601); APP USA Winddown, LLC (f/k/a American Apparel (USA), LLC) (8940); APP Retail Winddown, Inc. (f/k/a American Apparel Retail, Inc.) (7829); APP D&F Winddown, Inc. (f/k/a American Apparel Dyeing & Finishing, Inc.) (0324); APP Knitting Winddown LLC (f/k/a KCL Knitting, LLC) (9518); and APP Shipping Winddown, Inc. (f/k/a Fresh Air Freight, Inc.) (3870). The address of each of the Debtors is 107 Millcreek Corners, Suite B, P O Box 5129, Brandon, MS 39047.

voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court").

2. Upon information and belief, the Debtors continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these cases.

3. On June 12, 2018, the Debtors filed the Disclosure Statement.[2]

4. Concurrently therewith, the Debtors also filed their Joint Plan of Liquidation of the Debtors and Debtors in Possession [Docket No. 1746] (the "Plan").

5. As relevant herein, the Disclosure Statement and corresponding section of the Plan provide:

> Any insurance policy acquired for the benefit of the Debtors (or any Representatives thereof or successors thereto) before or after the Effective Date shall remain in full force and effect for the benefit of the Debtors and their Representatives without requiring payment by the Post-Confirmation Debtors, the Debtors or their Estates to pay any additional amounts as an Administrative Claim or otherwise on account of any prior, current or future obligations asserted to be due by the respective insurer. Notwithstanding anything to the contrary contained in the Plan or in the Confirmation Order, Confirmation of the Plan shall not impair, diminish or otherwise adversely modify any coverage (or the enforceability thereof) under any of the Debtors' insurance policies (including, without limitation, policies for the benefit of the Debtors' directors, officers, employees, members, or managers who serviced in such capacity as of or any time after the Petition Date) and any "tail coverage" relating thereto

Disclosure Statement Section IV(E)(12) and Plan Article III(L).

6. Further, the Disclosure Statement and Plan also provide:

> Notwithstanding anything to the contrary herein, if any Allowed Claim is covered by an insurance policy, such Claim shall first be paid from proceeds of such insurance policy to the extent such

---

[2] All capitalized terms used herein but not defined shall have the meanings ascribed to them in the Disclosure Statement.

2

proceeds are available, with the balance, if any, treated in accordance with the provisions of the Plan governing the Class applicable to such Claim. If there is a self-insured retention or a deductible, insurance proceeds shall be deemed to be unavailable for that portion of an Allowed Claim corresponding to the remaining amount of a deductible or self-insured retention.

Disclosure Statement Section IV(E)(12) and Plan Article II(E).

### B. The Insurance Programs

7. Prior to the Petition Date, the Chubb Companies issued certain insurance policies (as renewed, amended, modified, endorsed or supplemented from time to time, collectively, the "Policies") to one or more of the Debtors, as named insureds.

8. Pursuant to certain Policies (together with any agreements related thereto, the "ACE Insurance Program"), ACE American Insurance Company provides, *inter alia*, international, directors and officers, excess, corporate risk, marine cargo and other insurance for specified policy periods subject to certain limits, deductibles, retentions, exclusions, terms and conditions, as more particularly described therein and the insureds, including one or more of the Debtors, are required to pay to the Chubb Companies certain amounts including, but not limited to, insurance premiums (including audit premiums), deductibles, funded deductibles, expenses, taxes, assessments and surcharges, as more particularly described in the ACE Insurance Program (the "ACE Program Obligations").

9. Pursuant to other Policies (together with any agreements related thereto, the "Chubb Insurance Program", and collectively with the ACE Insurance Program, the "Insurance Programs"),[3] Federal Insurance Company, Great Northern Insurance Company and Pacific

---

[3] The descriptions of the Insurance Programs set forth herein are not intended to, and shall not be deemed to amend, modify or waive any of the terms or conditions of the Insurance Programs. Reference is made to the Insurance Programs for a complete description of their terms and conditions.

3

Indemnity Company provide, *inter alia*, environmental, directors and officers, fiduciary liability and other insurance for specified policy periods subject to certain limits, deductibles, retentions, exclusions, terms and conditions, as more particularly described therein, and the insureds, including one or more of the Debtors, are required to pay to the Chubb Companies certain amounts including, but not limited to, insurance premiums (including audit premiums), deductibles, funded deductibles, expenses, taxes, assessments and surcharges, as more particularly described in the Chubb Insurance Program (the "Chubb Program Obligations," and collectively with the ACE Program Obligations, the "Obligations").

10. The Debtors' Obligations are payable over an extended period of time and are subject to future audits and adjustments.

## SUMMARY OF OBJECTION

11. The Chubb Companies object to the Disclosure Statement on the grounds, that: (I) the Debtors cannot alter or otherwise modify the terms of the Insurance Programs through the Disclosure Statement and the Plan; (II) while it appears that the Debtors seek to obtain the benefits of the Insurance Programs (*see* Disclosure Statement Section IV(E)(12)), neither the Disclosure Statement nor the Plan address the fact that in order to do so, the Debtors (or their successors) must remain liable for the Obligations under the Insurance Programs; and (III) the Insurance Programs cannot be assigned without the prior written consent of the Chubb Companies. The Chubb Companies also have concerns that the Plan may not be confirmable as drafted.

## OBJECTIONS

12. Section 1125 of the Bankruptcy Code provides that a plan proponent may not solicit acceptance or rejection of a plan unless, before such solicitation, the plan proponent

4

transmits to the parties to be solicited, the plan and a disclosure statement, containing "adequate information," as defined in section 1125(a) of the Bankruptcy Code, which has been approved by the Bankruptcy Court, after notice and a hearing. See 11 U.S.C. § 1125(b).

13. A disclosure statement contains "adequate information" if it provides information concerning the proposed plan of a kind and in sufficient detail that would enable a hypothetical reasonable investor typical of the holders of claims or interests of the relevant class to make an informed judgment about the plan. See 11 U.S. C. § 1125(a).

14. Courts in the Third Circuit consistently refuse to approve disclosure statements that lack the information that a "reasonable hypothetical investor" would require to make an informed decision about the proposed plan. *See, e.g., Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 362 (3d Cir. 1996); *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417-18 (3d Cir.), *cert. denied*, 488 U.S. 967 (1988); *In re Route 202 Corp.*, 37 B.R. 367, 375 76 (Bankr. E.D. Pa. 1984); *In re Fierman*, 21 B.R. 314 (Bankr. E.D. Pa. 1982); *In re E. Redley Corp.*, 16 B.R. 429 (Bankr. E.D. Pa. 1982); *In re Civitella*, 15 B.R. 206 (Bankr. E.D. Pa. 1981).

15. Additionally, a disclosure statement should not be approved where the related plan is unconfirmable. *In re Am. Capital Equip., LLC*, 688 F.3d 145, 154 (3d Cir. 2012) (where "it appears there is a defect that makes a plan inherently or patently unconfirmable, the Court may consider and resolve that issue at the disclosure stage before requiring the parties to proceed with solicitation of acceptances and rejections and a contested confirmation hearing") (quotations omitted).

### A. The Disclosure Statement Should Not Be Approved Because the Plan May Not Be Confirmable Because It Seeks To Alter Or Amend the Insurance Program

16. As noted above, Disclosure Statement Section IV(E)(12) and Plan Article IV(III)(L) provide, in relevant part:

> Any insurance policy acquired for the benefit of the Debtors (or any Representatives thereof or successors thereto) before or after the Effective Date shall remain in full force and effect for the benefit of the Debtors and their Representatives *without requiring payment by the Post-Confirmation Debtors, the Debtors or their Estates to pay any additional amounts as an Administrative Claim or otherwise on account of any prior, current or future obligations asserted to be due by the respective insurer.*

Disclosure Statement Section IV(E)(12) and Plan Article III(L) (emphasis added).

17. In addition, as indicated above, the Disclosure Statement and Plan provide that, as for the payment of Allowed Claims, to the extent covered by insurance, such Claims are to be paid first from the proceeds of such applicable insurance policy, and the "[i]f there is a self-insured retention or a deductible, insurance proceeds shall be deemed to be unavailable for that portion of an Allowed Claim corresponding to the remaining amount of a deductible or self-insured retention." DS Section IV(A)(4) and Plan Article II(E).

18. Moreover, the Disclosure Statement and Plan contain provisions which provide for the release of claims and other causes of action, the vesting and transfer of assets in the Post-Confirmation Debtors free and clear of liens, releases of certain third-parties, and exculpation and injunctions against certain actions. *See, e.g.*, Disclosure Statement Sections IV(D)(2)-(6).

19. Notwithstanding the Disclosure Statement's providing that nothing shall "impair, diminish or otherwise adversely modify any coverage (or the enforceability thereof) under any of the Debtors' insurance policies" (Disclosure Statement Section IV(E)(12)), the Debtors attempt to do exactly this through the provisions described above.

20. It is well-established that courts cannot alter terms of contracts, and must instead enforce them as written. *See, e.g., In re WorldCorp, Inc.*, 252 B.R. 890, 897 (Bankr. D. Del. 2000) (a court may not "rewrite [a] contract to include terms that a party wishes [it] had bargained for, but did not, prior to execution of the agreement."); *Coca-Cola Bottling Co. of Shreveport v. Coca-Cola Co.*, 769 F. Supp. 671, 707 (D. Del. 1991) aff'd, 988 F.2d 414 (3d Cir. 1993) ("Courts do not rewrite contracts to include terms not assented to by the parties."); *In re Best Mfg. Grp. LLC*, 2012 WL 589643, at *6 (Bankr. D.N.J. 2012)("Where the terms of a contract are clear and unambiguous there is no room for interpretation or construction and the courts must enforce those terms as written"); *In re Frontier Airlines*, 88 B.R. 332, 337 (Bankr. D. Colo. 1988) (courts have "no authority to rewrite contracts and then compel a party to fulfill a duty for which he did not contract"); *TIG Spec. Ins. Co. v. Koken*, 855 A.2d 900, 908 (Pa. Commw. 2004), *aff'd* 586 Pa. 84 (Pa. 2005) ("It is not proper, under the guise of construction, to alter the terms to which the parties, whether in wisdom or folly, expressly agreed.").

21. To the extent that the Plan seeks to alter, amend or re-write the terms and conditions of the Insurance Program, the Plan is not confirmable and the Disclosure Statement should not be approved.

22. Accordingly, the Disclosure Statement and Plan must therefore clarify that nothing in the Disclosure Statement, Plan, Plan Supplement or Confirmation Order, including, but not limited to, those provisions identified above, shall modify, alter or impair the Insurance Programs.

B. **The Debtors and Their Successor(s) Cannot Continue To Receive The Benefits Of The Insurance Programs Without Remaining Liable For The Obligations Thereunder.**

23. Pursuant to Disclosure Statement Section IV(E)(12) and Plan Article III(L) quoted above, it appears that the Debtors seek to have the Insurance Programs vest in the Post-Confirmation Debtors such that the Post-Confirmation Debtors will receive the benefits of the Insurance Programs.

24. But the Disclosure Statement and Plan provide that neither the Debtors nor the Post-Confirmation Debtors shall be liable for any Obligations thereunder.

25. It is well-established that debtors (and their successors) cannot seek to receive benefits of a contract without being liable for obligations thereunder. *See Tompkins ex. rel. A.T. v. Troy Sch. Dist.*, 199 Fed. Appx. 463, 468 (6th Cir. 2006) (holding that it is a basic principle of contract law that a party to an agreement is constrained to accept the burdens as well as the benefits of the agreement); *Bhushan v. Loma Alta Towers Owner's Association, Inc.*, 148 Fed. Appx. 882, 888 (11th Cir. 2005) (stating "one who has accepted a contract's benefit may not challenge its validity in order to escape its burdens"); *St. Paul Fire & Marine Ins. Co. v. Compaq Computer Corp.*, 457 F.3d 766, 773 (8th Cir. 2006) (finding that a party who accepts the benefit of a contract must also assume its burdens); *In re Texas Rangers Baseball Partners*, 521 B.R. 134, 180 (Bankr. N.D. Tex. 2014) ("A debtor may not merely accept the benefits of a contract and reject the burdens to the detriment of the other party."). *See also, In re University Medical Center*, 973 F.2d 1065, 1075 (3d Cir. 1992), *reh'g en banc denied,* 1992 U.S. App. LEXIS 27506 (Oct. 21, 1992) (stating "(a)ssumption of the executory contract requires the debtor to accept its burdens as well as permitting the debtor to profit from its benefits"); *In re Metro Transp. Co.*, 87 B.R. 338, 342 (Bankr. E.D. Pa. 1982) (stating "assumption or rejection of an executory contrary requires an all-

8

or-nothing commitment going forward, and that hence a debtor cannot assume part of an executory contract in the future while rejecting another part"); *In re TSW Stores of Nanuet, Inc.*, 34 B.R. 299, 304 (Bankr. S.D.N.Y. 1983) (citation omitted) (stating "(i)t is settled law that a trustee or a debtor in possession 'takes the contracts of the debtor subject to their terms and conditions. Contracts adopted by him are assumed cum onere'").

26. Further, each of the Insurance Programs is an integrated insurance program and therefore, each must be read, interpreted and enforced in its entirety. *See Huron Consulting Servs., LLC v. Physiotherapy Holdings, Inc. (In re Physiotherapy Holdings, Inc.)*, 538 B.R. 225 (D. Del. 2015) (reversing bankruptcy court decision which permitted debtor to assume one agreement between itself and another party, and not the related agreements; holding that all agreements must be assumed or rejected together); *In re Aneco Elec. Constr.*, 326 B.R. 197, 202 (Bankr. M.D. Fla. 2005) (finding "single, non-severable agreement" where contracts were between same parties and obligations of each party are mutually dependent upon the other); *In re Karfakis*, 162 B.R. 719 (Bankr. E.D. Pa. 1993) (stating "two contracts which are essentially inseparable can be, and should be, viewed as a single, indivisible agreement between the parties"); *Dunkin' Donuts Franchising LLC v. CDDC Acquisition Co. LLC (In re FPSDA I, LLC)*, 470 B.R. 257, 269 (E.D.N.Y. 2012) (holding that "two agreements [were] so interrelated, [that] they form[ed] a single overarching executory contract").

27. Accordingly, to the extent that the Debtors seek to vest the Policies in a successor to the Debtors and retain the benefits of the Insurance Programs, the entirety of each of the Insurance Programs must so vest and the Debtors and their successor(s) must remain liable for the Obligations thereunder.

### C. The Insurance Programs Cannot Be Assigned Without the Prior Written Consent of the Chubb Companies, Which Has Not Been Given.

28. To the extent that the Debtors under the Disclosure Statement and Plan seek to transfer or assign the Insurance Programs to the Post-Confirmation Debtors, the Creditors' Fund Trustee or their Representatives not otherwise covered under the Insurance Program, such transfer or assignment cannot occur without the express written consent of the Chubb Companies.

29. Pursuant to 11 U.S.C. § 365(c), a debtor may not assume or assign an executory contract if applicable law excuses the counterparty from accepting performance from or rendering performance to an entity other than the debtor and such party does not consent to the assumption or assignment. 11 U.S.C. § 365(c)(1)(A) and (B).

30. Applicable non-bankruptcy law does, in fact, prohibit the assignment of insurance policies without the insurer's consent. *See, e.g., Allied Corp. v. Frola*, No. 87-462, 1992 U.S. Dist. LEXIS 15778 (D.N.J. Oct. 6, 1992) (holding that insurance policies are not assignable without the consent of the insurers); *Touchet v. Guidry*, 550 So. 2d 308, 313 (La. App. 1989) (holding that an insurance policy is a personal contract between the insurer and the named insured; and that, ". . . coverage terminates when the contract is assigned or transferred without the consent, permission, and approval of both contracting parties") (citations omitted); *Shadid v. Am. Druggist Fire Ins. Co.*, 386 P.2d 311 (Okla. 1963) (noting the importance of an insurer's consent to an assignment of an insurance policy, and holding that the policy does not pass to the purchaser simply by a sale of the insured property).[4]

---

[4] Some courts have found that insurance policies may be assigned to a trust created under § 524(g) pursuant to a plan under § 1123 without the consent of the insurer. *See, e.g., In re Federal-Mogul Global*, 684 F.3d 355, 382 (3d Cir. 2012) (holding that anti-assignment provisions in insurance policies were preempted by § 1123(a)(5)(B) [of the Bankruptcy Code] to the extent they prohibit transfer to a § 524(g) trust"); *In re W.R. Grace & Co.*, 475 B.R. 34, 198-99 (D. Del. 2012) (holding that anti-assignment provisions in insurance policies

10

31. Similarly, insurers cannot be compelled to provide insurance coverage to any entity. *See Atwood v. Progressive Ins. Co.*, No. 950051089S, 1997 Conn. Super. LEXIS 2450, at *18 (Conn. Super. Ct. Sept. 3, 1997) (stating that "[i]nsurers should not, for example, be forced to assume coverage for a risk which at the time a policy was written was not fairly in its and the insured's contemplation"); *King v. Meese*, 43 Cal. 3d 1217, 1222 (Cal. 1987) (noting that "an insurer may refuse to insure based on any permissible classification"); *Cummins v. Nat'l Fire Ins. Co.*, 81 Mo. App. 291, 296 (Mo. Ct. App. 1899) ("An insurance company may well refuse to insure some persons. They, like any other entity, have a right of choice as to who they will contract with and they can no more be forced to a change of the assured than the assured could be forced to accept insurance from some other company (in which he may have no confidence) than the one contracted with."). Therefore, the Insurance Programs cannot be assigned without the consent of the Chubb Companies.

32. Therefore, because the Chubb Companies have not consented to any proposed transfer or assignment of the Insurance Programs, the Chubb Companies object to any and all such transfers or assignments at this time.

D. **Reservation of Rights.**

33. The Chubb Companies specifically reserve all of their rights with respect to the Insurance Programs and their right to assert additional objections to the Disclosure Statement and the Plan.

---

were preempted by § 1123(a)(5)(B) in the context of the establishment of a § 524(g) trust). The present case does not involve an assignment to a trust created pursuant to § 524(g).

WHEREFORE, the Chubb Companies respectfully request that this Court (a) either (i) condition any approval of the Disclosure Statement to inclusion of the modifications requested herein, or (ii) deny the request for approval of the Disclosure Statement as it does not contain the adequate information required by 11 U.S.C. § 1125; and (b) grant such other relief as the Court deems appropriate

Dated: July 11, 2018

Respectfully submitted,

DUANE MORRIS LLP

By: */s/ Richard W. Riley*
Richard W. Riley, Esq. (DE Bar No. 4052)
Duane Morris LLP
222 Delaware Avenue, Suite 1600
Wilmington, DE 19801
Telephone: 302-657-4928
Fax: 302-657-4901
Email: rwriley@duanemorris.com

-and-

Wendy M. Simkulak, Esquire
Drew S. McGehrin, Esquire
30 South 17th Street
Philadelphia, PA 19103-4196
Telephone: (215) 979-1000
Email: wmsimkulak@duanemorris.com
Email: dsmcgehrin@duanemorris.com

*Counsel for the Chubb Companies*