# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| APP WINDDOWN, LLC, *et al.*[1] | ) | Case No. 16-12551 (BLS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Objection Deadline: July 10, 2018**[2] |
| | ) | **Hearing Date: July 17, 2018 at 10:00 a.m.** |
| | ) | |
| | ) | Docket Ref. Nos. 1747, 1762 |

## OBJECTION OF ARCH INSURANCE COMPANY TO DEBTORS' MOTION FOR AN ORDER (I) APPROVING DISCLOSURE STATEMENT, (II) APPROVING THE FORM AND MANNER OF SERVICE OF DISCLOSURE STATEMENT NOTICE, (III) ESTABLISHING PROCEDURES FOR SOLICITATION AND TABULATION OF VOTES TO ACCEPT OR REJECT PLAN OF LIQUIDATION AND (IV) SCHEDULING HEARING ON CONFIRMATION OF PLAN OF LIQUIDATION

Arch Insurance Company and certain of its affiliates (collectively, "Arch"),[3] by and through their undersigned counsel, file this objection (the "Objection") to *Debtors' Motion for an Order (I) Approving Disclosure Statement, (II) Approving the Form and Manner of Service of Disclosure Statement Notice, (III) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject Plan of Liquidation and (IV) Scheduling Hearing on Confirmation of*

---

[1] The Debtors are the following six entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): APP Winddown, LLC (f/k/a American Apparel, LLC) (0601); APP USA Winddown, LLC (f/k/a American Apparel (USA), LLC) (8940); APP Retail Winddown, Inc. (f/k/a American Apparel Retail, Inc.) (7829); APP D&F Winddown, Inc. (f/k/a American Apparel Dyeing & Finishing, Inc.) (0324); APP Knitting Winddown, LLC (f/k/a KCL Knitting, LLC) (9518); and APP Shipping Winddown, Inc. (f/k/a Fresh Air Freight, Inc.) (3870). The address of each of the Debtors is 5800 S. Eastern Avenue, Suite 500, Commerce, CA 90040.

[2] Extended for Arch through and including July 11, 2018 by agreement of the Debtors.

[3] Unless otherwise defined in this Objection, capitalized terms used herein shall have the meanings given to them in Motion for Entry of an Order Allowing Administrative Expense Claims of Arch Pursuant to 11 U.S.C. § 503(b)(1)(A) [Docket No. 1789] (the "Administrative Expense Motion"). A full recitation of the factual background underlying the Policies, the Loss Sensitive Program Agreement (the "LSPA") entered into in connection therewith, and the relevant bankruptcy proceedings and filings prior to the filing of the Debtors' Plan and Disclosure Statement is incorporated into Arch's Administrative Expense Motion and the accompanying Declaration of Richard Stock in Support of Arch's Motion for Entry of an Order Allowing Administrative Expense Claims of Arch Pursuant to 11 U.S.C. § 503(b)(1)(A) [Docket No. 1790].

*Plan of Liquidation* [Docket No. 1762] (the "Motion").  In support of this Objection, Arch respectfully represents as follows:

## PRELIMINARY STATEMENT

1. The Disclosure Statement should not be approved because it does not include adequate information.  According to the Plan and Disclosure Statement, the Debtors intend to fund creditor recoveries from funds posted by the Debtors in respect of the Policies, which were used to secure the workers' compensation deductible obligations under the Policies.  (*See* Disclosure Statement Section III(F)(6).)  The Plan specifically identifies Arch and American International Group, Inc. ("AIG") as sources of such funds.  (*See* Plan Article I(A)(116) and I(A)(141).)  However, the Plan and Disclosure Statement fail to disclose that, as set forth herein and in the Administrative Expense Motion, Arch has exhausted the funds posted by the Debtors and currently does not hold any funds securing the Debtors' ongoing obligations under the Policies.

2. In any event, even if the Disclosure Statement was modified to include the information set forth above, the Plan, on its face, is patently unconfirmable because it purports to assume certain executory contracts without satisfying the administrative expense claims incurred in connection therewith.  Specifically, through the Plan, the Debtors propose to carve out insurance contracts, such as the Policies, from those contracts rejected under the Plan, (*see* Plan Article IV(A)), but nevertheless announce that the Debtors will not satisfy any administrative claims arising under the Policies.  (*See* Plan Article III(L).)  In other words, the Debtors propose to assume those executory contracts without satisfying the amounts owed in connection therewith, in direct contravention of sections 365 and 1129(a)(9) of the Bankruptcy Code.

3. Arch has raised these issues with the Debtors and provided comments to certain provisions of the Plan and Disclosure Statement that would remedy these issues.  Arch and the

Debtors are continuing to discuss modifications to those provisions of the Plan and Disclosure Statement, and Arch is hopeful that it will be able to reach an agreement on modifications to the Plan and Disclosure Statement in advance of the hearing on the Disclosure Statement.

**OBJECTION**

A. **THE DISCLOSURE STATEMENT LACKS ADEQUATE INFORMATION AND FAILS TO MEET THE REQUIREMENTS OF 11 U.S.C. §1125**

4. Section 1125(b) of the Bankruptcy Code prohibits the solicitation of votes in respect of a plan of reorganization "unless, at the time of or before such solicitation, there is transmitted . . . a written disclosure statement . . . containing adequate information." 11 U.S.C. § 1125(b). Adequate information is defined in section 1125(a) of the Bankruptcy Code as "information of a kind, and in sufficient detail . . . that would enable [ ] a hypothetical reasonable investor . . . to make an informed judgment about the plan." 11 U.S.C. § 1125(a)(1).

5. As the Third Circuit has stated, the "debtor has the burden of proving that a disclosure statement is adequate, including showing that the plan is confirmable or that defects might be cured or involve material facts in dispute." *In re Am. Capital Equip., LLC*, 688 F.3d 145, 155 (3d Cir. 2012). This includes the requirement to "clearly and succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution." *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991).

6. Here, the Debtors have not met their burden. Specifically, the Disclosure Statement fails to disclose that Arch is owed a significant administrative expense claim above any funds or other collateral it held on account of the workers' compensation policies issued by Arch. As such, there will be no excess funds on account of these policies available to pay recoveries to the Debtors' creditors. Indeed, Arch's administrative expense claim, if allowed in

full, could materially affect recoveries to all creditors. Such information should be front-and-center in the Disclosure Statement.

**B. THE DISCLOSURE STATEMENT SHOULD NOT BE APPROVED BECAUSE THE PLAN IS PATENTLY UNCONFIRMABLE**

7. In any event, the Disclosure Statement should not be approved because the Plan, on its face, is patently unconfirmable, and solicitation of the Plan would represent a significant waste of estate resources.

8. Section 1129(a)(1) of the Bankruptcy Code provides, in relevant part, that a "court shall confirm a plan only if . . . [t]he plan complies with the applicable provisions of this title." 11 U.S.C. § 1129(a)(1). As this Court is well aware, if a plan is patently unconfirmable on its face, approval of a disclosure statement must be denied. *See In re Am. Capital Equip., LLC*, 688 F.3d at 154 ("We . . . hold that a bankruptcy court may address the issue of plan confirmation where it is obvious at the disclosure statement stage that a later confirmation hearing would be futile because the plan described by the disclosure statement is patently unconfirmable."); *In re Quigley Co.*, 377 B.R. 110, 115-116 (Bankr. S.D.N.Y. 2007) ("If the plan is patently unconfirmable on its face, the application to approve the disclosure itself must be denied as solicitation of the vote would be futile."). This principle is based on the recognized notion that bankruptcy courts have a paramount obligation to guard against unnecessary expenditures and waste of estate assets. *See In re Phoenix Petroleum Co.*, 278 B.R. 385, 394 (Bankr. E.D. Pa. 2001) ("If the disclosure statement describes a plan that is so fatally flawed that confirmation is impossible, the court should exercise its discretion to refuse to consider the adequacy of disclosures. Such an exercise of discretion is appropriate because undertaking the burden and expense of plan distribution and vote solicitation is unwise and inappropriate if the proposed plan could never legally be confirmed." (internal citations omitted)).

9. Here, the Disclosure Statement should not be approved because the Plan includes a critical flaw that renders it patently unconfirmable. Specifically, the Plan provides for the assumption of executory contracts (e.g., the insurance contracts and policies) without the payment of administrative expenses incurred in connection therewith. Indeed, the Plan provides:

> Any insurance policy acquired for the benefit of the Debtors (or any Representatives thereof or successors thereto) before or after the Effective Date shall remain in full force and effect for the benefit of the Debtors and their Representatives **without requiring payment by the Post-Confirmation Debtors, the Debtors or their Estates to pay any additional amounts as an Administrative Claim or otherwise on account of any prior, current or future obligations asserted to be due by the respective insurer. . . .**

(Plan Article III(L) and Disclosure Statement Section IV(E)(12) (emphasis added).)

10. This runs directly afoul of the explicit requirements of section 365 of the Bankruptcy Code, which requires a debtor to cure all outstanding amounts due under the executory contract to be assumed, and section 1129(a)(9) of the Bankruptcy Code, which requires that a chapter 11 plan provides that holders of administrative expense claims receive cash equal to the allowed amount of their claims. Accordingly, without a modification to this provision, solicitation of the Plan would constitute a tremendous waste of time and estate resources.

11. Moreover, the Plan is not confirmable because, as set forth herein and in the Administrative Expense Motion, it seeks to amend Arch's and the Debtors' rights and obligations under the Polices. This is contrary to applicable law, and the Bankruptcy Code does not confer the Debtors or the Court with that right. *See, e.g., In re WorldCorp, Inc.,* 252 B.R. 890, 897 (Bankr. D. Del. 2000) (holding that a court may not "rewrite [a] contract to include terms that a party wishes [it] had bargained for, but did not, prior to execution of the agreement."). As a result, the Disclosure Statement should not be approved, without necessary changes to the Plan.

## RESERVATION OF RIGHTS

12. Arch hereby reserves all rights and remedies that may now or hereafter be available under the Plan and Disclosure Statement, including its rights to supplement this Objection, to raise any and all supplemental arguments at any hearing on approval of the Disclosure Statement, and to assert an objection to confirmation of the Plan.

## CONCLUSION

WHEREFORE, Arch respectfully requests that this Court (i) sustain the Objection, (ii) deny the Motion, and (iii) grant such other and further relief as is just and proper.

Dated: July 11, 2018
Wilmington, Delaware

/s/ Morgan L. Patterson
Matthew P. Ward (Del. Bar No. 4471)
Morgan L. Patterson (Del. Bar No. 5388)
WOMBLE BOND DICKINSON (US) LLP
222 Delaware Avenue
Suite 1501
Wilmington, DE 19801
Telephone: (302) 252-4320
E-mail: matthew.ward@wbd-us.com
E-mail: morgan.patterson@wbd-us.com

-and-

Curtis C. Mechling (*pro hac pending*)
Gabriel E. Sasson (*pro hac pending*)
Emily L. Kuznick (*pro hac pending*)
STROOCK & STROOCK & LAVAN LLP
180 Maiden Lane
New York, New York 10038
Telephone: (212) 806-5400
E-mail: cmechling@stroock.com
E-mail: gsasson@stroock.com
E-mail: ekuznick@stroock.com

*Co-Counsel to the Arch Insurance Company*