**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | : | **Chapter 11** |
| | : | |
| **APP WINDDOWN, LLC, *et al.*,**[1] | : | **Case No. 16-12551 (BLS)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |

**FINDINGS OF FACT, CONCLUSIONS OF LAW AND
ORDER CONFIRMING THE SECOND AMENDED JOINT PLAN OF
LIQUIDATION OF THE DEBTORS AND DEBTORS IN POSSESSION**

APP Winddown, LLC (f/k/a American Apparel, LLC), APP USA Winddown,

LLC (f/k/a American Apparel (USA), LLC), APP Retail Winddown, Inc. (f/k/a American

Apparel Retail, Inc.), APP D&F Winddown, Inc. (f/k/a American Apparel Dyeing & Finishing,

Inc.), APP Kniting Winddown, LLC (f/k/a KCL Knitting, LLC) and APP Shipping Winddown,

Inc. (f/k/a Fresh Air Freight, Inc.), as debtors and debtors in possession (collectively,

the "Debtors"), having:

> a.  proposed the *Second Amended Joint Plan of Liquidation of the Debtors
> and Debtors in Possession* (in the form filed on the docket of this Court on
> October 16, 2018 [Docket No. 1928] (the "October 16 Plan")), as
> modified pursuant to the *Third Amended Joint Plan of Liquidation of the
> Debtors and Debtors in Possession* (as it may be further modified and
> including any exhibits thereto and any modifications described herein,
> the "Plan"), a true and correct copy of which (without exhibits) is attached
> hereto as Appendix I;[2] and

---

[1]  The Debtors are the following six entities (the last four digits of their respective taxpayer identification
numbers follow in parentheses): APP Winddown, LLC (f/k/a American Apparel, LLC) (0601); APP USA
Winddown, LLC (f/k/a American Apparel (USA), LLC) (8940); APP Retail Winddown, Inc. (f/k/a
American Apparel Retail, Inc.) (7829); APP D&F Winddown, Inc. (f/k/a American Apparel Dyeing &
Finishing, Inc.) (0324); APP Knitting Winddown LLC (f/k/a KCL Knitting, LLC) (9518); and APP
Shipping Winddown, Inc. (f/k/a Fresh Air Freight, Inc.) (3870).  The address of each of the Debtors is 107
Millcreek Corners, Suite B, P O Box 5129, Brandon, MS 39047.

[2]  All capitalized terms used but not defined herein have the meanings given to them in the Plan or the
Disclosure Statement, as applicable.

b.      filed the *Disclosure Statement for Second Amended Joint Plan of Liquidation Proposed by the Debtors and Debtors in Possession* on October 16, 2018 [Docket No. 1929] (the "Disclosure Statement");

The United States Bankruptcy Court for the District of Delaware (this "Court"):

a.      having entered *the Order (I) Approving Disclosure Statement, (II) Approving the Form and Manner of Service of Disclosure Statement Notice, (III) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject Plan of Liquidation and (IV) Scheduling Hearing on Confirmation of Plan of Liquidation* [Docket No. 1924] (the "Disclosure Statement Order"), which, among other things, (i) approved the Disclosure Statement under section 1125 of title 11 of the United States Code (the "Bankruptcy Code"), (ii) established November 28, 2018 as the date for the commencement of the hearing to consider confirmation of the Plan (the "Confirmation Hearing"), (iii) approved the form and manner of notice of the Confirmation Hearing, (iv) established certain procedures for soliciting and tabulating votes with respect to the Plan and (v) established November 21, 2018 at 4:00 p.m. (ET) as the deadline for objections to confirmation of the Plan (the "Confirmation Objection Deadline") and November 21, 2018 at 5:00 p.m. (ET) as the Voting Deadline (the "Voting Deadline").

The Debtors having further:

a.      timely and properly:

    (i)     solicited the Plan and provided Solicitation Packages to Holders of Claims and Interests; and

    (ii)    provided due and proper notice of the Confirmation Hearing, the Confirmation Objection Deadline and the Voting Deadline to Holders of Claims against, and Interests in, the Debtors and other parties in interest, in each case, in compliance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Local Bankruptcy Rules for the District of Delaware (the "Local Bankruptcy Rules") and the Disclosure Statement Order, as established by (A) the *Affidavit of Service of Solicitation Materials of Craig Johnson, an employee of Prime Clerk LLC* ("Prime Clerk"), the Notice and Claims Agent appointed in these Chapter 11 Cases, filed on October 30, 2018 [Docket No. 1945] (the "Initial Solicitation Affidavit of Service"), (B) the *Affidavit of Service of Hassan Alli-Balogun, an employee of Prime Clerk*, filed on October 29, 2018 [Docket No. 1943] (the "Insurance Policy Affidavit of Service") and (C) *Supplemental Affidavits of Service of Sebastian V. Higgins, an employee of Prime Clerk*, filed on November 12, 2018 and November 13, 2018

- 2 -

[Docket Nos. 1952 and 1953] (together with the Initial Solicitation Affidavit of Service and the Insurance Policy Affidavit of Service, the "Solicitation Affidavits of Service");

b.  published notice of the Confirmation Hearing one time in the national edition of *USA Today* and one time in the *Los Angeles Times* on October 22, 2018, as set forth in the *Affidavit of Publication of Gregory R. DePalma,* an employee of Prime Clerk, filed on October 23, 2018 [Docket No. 1938] (the "Publication Affidavit");

c.  on November 9, 2018, filed the *Notice of Filing of Plan Supplement* [Docket No. 1950] (as the same may have been modified, supplemented or otherwise amended from time to time, the "Plan Supplement");

d.  received certain objections to confirmation of the Plan, including:

(i)  *Limited Objection of Illinois Department of Revenue to Confirmation of Second Amended Joint Plan of Liquidation* [Docket No. 1967];

(ii)  *Objection by the United States to the Second Amended Joint Plan of Liquidation of the Debtors and Debtors in Possession* [Docket No. 1969]; and

(iii)  *Litigation Trustee's Limited Objection to Confirmation of the Joint Plan of Liquidation Proposed by the Debtors and Debtors in Possession* [Docket No. 1970];

((i) through (iii) collectively, the "Objections"); and

e.  filed:

(i)  the *Debtors' (I) Memorandum of Law in Support of Confirmation of Second Amended Joint Plan of Liquidation of the Debtors and Debtors in Possession and (II) Consolidated Reply to Certain Objections to Confirmation of Second Amended Joint Plan of Liquidation* [Docket No. 1974] (the "Confirmation Brief"); and

(ii)  the *Declaration of Bradley E. Scher in Support of Confirmation of the Second Amended Joint Plan of Liquidation of the Debtors and Debtors in Possession* [Docket No. 1973] (the "Scher Declaration").

This Court having:

a.  found that the Confirmation Hearing Notice (as defined in the Plan) provided the opportunity for any party in interest to object to confirmation

of the Plan and was otherwise adequate and appropriate under the circumstances and that no further notice is required;

b. familiarity with the Plan and other relevant factors affecting these Chapter 11 Cases;

c. considered the Confirmation Brief and the Scher Declaration:

d. commenced the Confirmation Hearing on November 28, 2018;

e. considered the entire record of the Confirmation Hearing, including, but not limited to:

   (i)    the Scher Declaration;

   (ii)   the exhibits admitted into evidence at the Confirmation Hearing, if any;

   (iii)  the arguments of counsel presented at the Confirmation Hearing;

   (iv)   the Objections;

   (v)    the resolution and/or settlement of the Objections; and

   (vi)   all other pleadings Filed by the Debtors in support of the Plan;

f. overruled with prejudice any and all Objections to the Plan and to Confirmation not sustained by the Court or consensually resolved or withdrawn, unless otherwise indicated herein; and

g. found the legal and factual bases set forth in the pleadings, documents, testimony and evidence Filed or adduced in support of Confirmation and presented at the Confirmation Hearing establish just cause for the relief granted herein.

After due deliberation and good and sufficient cause appearing therefor, and for the reasons set forth on the record at the Confirmation Hearing;

IT IS HEREBY FOUND, DETERMINED AND CONCLUDED THAT:

A. <u>Findings of Fact and Conclusions of Law.</u> The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are

adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.    <u>Venue and Jurisdiction.</u>  Venue in this Court was proper as of the Petition Date pursuant to 28 U.S.C. §§ 1408 and 1409 and was and continues to be proper during these Chapter 11 Cases.  This Court has jurisdiction over this matter and these Chapter 11 Cases pursuant to 28 U.S.C. § 1334.  Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and this Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed and to enter a final order with respect thereto.

C.    <u>Eligibility for Relief.</u>  The Debtors qualify as "debtors" under section 109 of the Bankruptcy Code, and the Debtors are proper proponents of the Plan.

D.    <u>Commencement and Administration of these Chapter 11 Cases.</u>  The Debtors commenced these Chapter 11 Cases on November 14, 2016, and have authority to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Chapter 11 Cases pursuant to section 1104 of the Bankruptcy Code.  In accordance with certain orders of this Court, these Chapter 11 Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).

E.    <u>Appointment of Statutory Committee.</u>  On November 22, 2016, the United States Trustee for the District of Delaware (the "<u>U.S. Trustee</u>"), pursuant to sections 1102(a) and (b) of the Bankruptcy Code, appointed certain unsecured creditors to the Creditors' Committee to represent the interests of all unsecured creditors in these Chapter 11 Cases.  The Creditors' Committee consists of the following seven members:  (i) Atalaya Asset Income Fund I LP,

(ii) E&C Fashion, Inc., (iii) Simon Property Group, (iv) Flintfox Consulting Group, Inc., (v) Andari Fashion Inc., (vi) Mediamath, Inc., and (vii) Garden City Group, LLC.  Atalaya Asset Income Fund I LP resigned from the Creditors' Committee as of April 24, 2017.

   F. <u>Judicial Notice.</u>  This Court takes judicial notice of the docket of these Chapter 11 Cases maintained by the Clerk of this Court or its duly appointed agent, including, but not limited to, all pleadings and other documents Filed, all orders entered, and all evidence and arguments made, proffered, adduced, and/or presented at the various hearings held before this Court during the pendency of these Chapter 11 Cases.

   G. <u>Solicitation and Notice.</u>  As evidenced by the Solicitation Affidavits of Service, the Solicitation Packages were transmitted and served in accordance with the terms of the Disclosure Statement Order.  Under the circumstances of these Chapter 11 Cases, such service of the Solicitation Packages, together with the other notices delivered pursuant to the terms of the Disclosure Statement Order and the publication of notice of the Confirmation Hearing as set forth in the Publication Affidavit were (i) conducted in good faith, (ii) provided adequate and sufficient notice of the Confirmation Hearing and the other requirements, deadlines and matters related to Confirmation of the Plan, (iii) timely and properly served or published in compliance with the Bankruptcy Code, the Bankruptcy Rules and the Disclosure Statement Order and (iv) provided due process and an opportunity to appear and to be heard to all parties in interest.  Because the foregoing transmittals, notices and service were adequate and sufficient, no other or further notice is necessary or shall be required.

   H. <u>Voting.</u>  As evidenced by the *Declaration of Craig E. Johnson of Prime Clerk LLC Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the Second Amended Joint Plan of Liquidation of the Debtors and Debtors in Possession* [Docket No. 1972]

- 6 -

(the "Voting Declaration"), votes on the Plan were solicited and tabulated fairly, in good faith

and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules and the Disclosure

Statement Order.  As set forth in the Voting Declaration, the following Classes of Claims voted

to accept the Plan:  3A, 3B, 3C, 3D, 3E, 3F, 4A, 4B, 4C, 4D, 4E and 4F.

      I.     Burden of Proof.  The Debtors have the burden of proving all elements of

sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence and the

Debtors have met that evidentiary burden.

      J.     Plan Supplement.  The documents identified in the Plan Supplement were

filed as required and notice of such documents was appropriate and satisfactory based upon the

circumstances of the Chapter 11 Cases and was in compliance with the provisions of the Plan,

the Disclosure Statement Order, the Bankruptcy Code, and the Bankruptcy Rules.  All

information and documents included in the Plan Supplement and the amendments thereto are

integral to, part of, and incorporated by reference into the Plan.  The Plan Supplement complies

with the terms of the Plan, and the filing and notice of such documents provided due, adequate,

and sufficient notice in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the

Local Bankruptcy Rules, and no other or further notice is necessary or shall be required.

      K.     Plan Modifications.  The modifications to the October 16 Plan made since

the commencement of solicitation as set forth in the Plan and as described in the Confirmation

Brief (the "Modifications") constitute immaterial modifications or do not adversely affect or

change the treatment of any Claims or Interests.  Pursuant to section 1127(b) of the Bankruptcy

Code and Bankruptcy Rule 3019, the Modifications do not require additional disclosure under

section 1125 of the Bankruptcy Code or the resolicitation of acceptances or rejections of the Plan

under section 1126 of the Bankruptcy Code, nor do they require that Holders of Claims against

the Debtors be afforded an opportunity to change previously cast acceptances or rejections of the

Plan. The Filing of the Modifications and the disclosure of the Modifications on the record at the

Confirmation Hearing, constitute due and sufficient notice thereof under the circumstances of

these Chapter 11 Cases. Accordingly, the Plan (which consists of the October 16 Plan as

modified by the Modifications) is properly before this Court, and all votes cast with respect to

the October 16 Plan prior to the Modifications shall be binding and shall apply with respect to

the Plan.

L.     <u>Bankruptcy Rule 3016.</u> The Plan is dated and identifies the Debtors as the

plan proponents, thereby satisfying Bankruptcy Rule 3016(a). The Disclosure Statement and the

October 16 Plan were filed under Docket Nos. 1929 and 1928, respectively, in these Chapter 11

Cases, thereby satisfying Bankruptcy Rule 3016(b). The injunction, release and exculpation

provisions in the Disclosure Statement and the Plan describe with specific and conspicuous

language all acts to be enjoined and identify the entities that will be subject to the injunction,

thereby satisfying Bankruptcy Rule 3016(c).

M.     <u>Good Faith Solicitation and Section 1125(e) of the Bankruptcy Code.</u> The

Debtors solicited votes in good faith and in a manner consistent with the Bankruptcy Code, the

Bankruptcy Rules, the Local Bankruptcy Rules and the Disclosure Statement Order. Based on

the record before the Court in these Chapter 11 Cases, including, but not limited to, the evidence

and testimony proffered, adduced or presented at the Confirmation Hearing, the Debtors and

their representatives (as applicable) have acted in "good faith" within the meaning of section

1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the

Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules in connection with all

of their respective activities relating to the Plan and are entitled to the protections afforded by

section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in Section VI.D

of the Plan.

## COMPLIANCE WITH THE REQUIREMENTS
## OF SECTION 1129 OF THE BANKRUPTCY CODE

N.       The evidentiary record of the Confirmation Hearing support the findings

of fact and conclusions of law set forth in the following paragraphs.

O.       Section 1129(a)(1) of the Bankruptcy Code. The Plan complies with each

applicable provision of the Bankruptcy Code.  In particular, the Plan complies with the

requirements of sections 1122 and 1123 of the Bankruptcy Code as follows:

1.    Section 1122 of the Bankruptcy Code. In accordance with section 1122(a)
of the Bankruptcy Code, Section II.B of the Plan classifies each Claim
against and Interest in each of the Debtors into a Class containing only
substantially similar Claims asserted against or Interests in each such
Debtor;

2.    Section 1123(a)(1) of the Bankruptcy Code. In accordance with
section 1123(a)(1) of the Bankruptcy Code, Section II.B of the Plan
properly classifies all Claims and Interests that require classification;

3.    Section 1123(a)(2) of the Bankruptcy Code. In accordance with
section 1123(a)(2) of the Bankruptcy Code, Section II.B of the Plan
properly identifies and describes each Class of Claims and Interests that is
not Impaired under the Plan;

4.    Section 1123(a)(3) of the Bankruptcy Code. In accordance with
section 1123(a)(3) of the Bankruptcy Code, Sections II.C.3, II.C.4, II.C.5
and II.C.6 of the Plan properly identify and describe the treatment of each
Class of Claims or Interests that is Impaired under the Plan;

5.    Section 1123(a)(4) of the Bankruptcy Code. In accordance with
section 1123(a)(4) of the Bankruptcy Code, the Plan provides the same
treatment for each Claim or Interest of a particular Class pertaining to each
Debtor unless the Holder of such Claim or Interest has agreed to less
favorable treatment;

6.    Section 1123(a)(5) of the Bankruptcy Code. In accordance with
section 1123(a)(5) of the Bankruptcy Code, the Plan and the documents in
the Plan Supplement provide adequate and proper means for the
implementation of the Plan;

7.    <u>Section 1123(a)(6) of the Bankruptcy Code.</u>  In accordance with section 1123(a)(6) of the Bankruptcy Code, Section X.D of the Plan provides that the Debtors will comply with section 1123(a)(6) of the Bankruptcy Code;

8.    <u>Section 1123(a)(7) of the Bankruptcy Code.</u>  In accordance with section 1123(a)(7) of the Bankruptcy Code, the provisions of the Plan regarding the manner of selection of officers and directors of the Post-Confirmation Debtors, including, without limitation, the provisions of Section III.A.3 of the Plan, are consistent with the interests of creditors and equity security holders and with public policy;

9.    <u>Section 1123(b)(1) of the Bankruptcy Code.</u>  In accordance with section 1123(b)(1) of the Bankruptcy Code, Section II.B of the Plan impairs or leaves unimpaired, as the case may be, each Class of Claims and Interests;

10.   <u>Section 1123(b)(2) of the Bankruptcy Code.</u>  In accordance with section 1123(b)(2) of the Bankruptcy Code, Section IV and other provisions of the Plan provide for the assumption, assumption and assignment or rejection of the Executory Contracts or Unexpired Leases of the Debtors that have not been previously assumed, assumed and assigned or rejected pursuant to section 365 of the Bankruptcy Code and orders of this Court;

11.   <u>Section 1123(b)(3) of the Bankruptcy Code.</u>  In accordance with section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019, Section VI.A of the Plan provides that the Plan constitutes a good faith compromise and settlement of all Claims, Interests, and controversies relating to the rights that a Holder of a Claim or Interest may have with respect to any Claim or Interest or any distribution to be made pursuant to the Plan on account of any such Claim or Interest.  Section III.P provides for the approval of the Arch Settlement and Section III.O addresses the Post-Confirmation Debtors' relationship with the Litigation Trust;

12.   <u>Section 1123(b)(5) of the Bankruptcy Code.</u>  In accordance with section 1123(b)(5) of the Bankruptcy Code, Section II.B of the Plan modifies or leaves unaffected, as the case may be, the rights of Holders of Claims in each Class;

13.   <u>Section 1123(b)(6) of the Bankruptcy Code.</u>  In accordance with section 1123(b)(6) of the Bankruptcy Code, the Plan includes additional appropriate provisions that are not inconsistent with applicable provisions of the Bankruptcy Code, including, without limitation, provisions (a) for distributions on account of Allowed Claims, (b) establishing procedures for resolving Disputed Claims and making distributions by the Post-Confirmation Debtors or the Creditors' Fund Trust, as applicable, on

- 10 -

account of such Disputed Claims once resolved, (c) regarding the discharge, release and injunction against the pursuit of Claims and termination of Interests, and (d) regarding the retention of this Court's jurisdiction; and

14.   <u>Section 1123(d) of the Bankruptcy Code.</u> To the extent the Plan proposes that the Debtors cure any defaults, the Debtors will comply with section 1123(d) of the Bankruptcy Code to the extent applicable.

P.   <u>Section 1129(a)(2) of the Bankruptcy Code.</u> The Debtors have complied with all applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by order of this Court, with respect to the Plan and the solicitation of acceptances or rejections thereof. In particular, the Plan complies with the requirements of sections 1125 and 1126 of the Bankruptcy Code as follows:

1.   In compliance with the Disclosure Statement Order and the Solicitation Package and General Notice Procedures approved thereunder (the "<u>Solicitation Procedures</u>"), the Debtors, through Prime Clerk, caused copies of the following materials to be transmitted to all Holders of Claims in Classes that were entitled to vote to accept or reject the Plan (<u>i.e.</u>, Claims in Classes 3A through 3F and 4A through 4F for voting purposes):

- a letter from the Debtors that, among other things, described the contents of the Solicitation Package and included information about how to access the Plan and Disclosure Statement free of charge on the Debtors' case administration website and how to obtain free paper copies of any documents contained in the Solicitation Package;

- the Confirmation Hearing Notice;

- the Disclosure Statement Order (excluding the exhibits thereto); and

- an appropriate form of Ballot and a pre-paid, pre-addressed return envelope for use by holders of Claims in voting Classes (collectively with the materials described in the preceding bullets, the "<u>Solicitation Package</u>").

<u>See</u> Solicitation Affidavits of Service.

DOCS_DE:222052.7 03635/001

2.  In compliance with the Disclosure Statement Order, the Debtors, through Prime Clerk, caused copies of the Solicitation Package (excluding the Ballots and the pre-paid, pre-addressed return envelope) to be transmitted to parties listed on the Master Service List utilized in these Chapter 11 Cases (the "Master Service List"), those parties that have filed Notices of Appearance in these Chapter 11 Cases (the "Rule 2002 Parties") and counterparties to Executory Contracts or Unexpired Leases. See Initial Solicitation Affidavit of Service.

3.  In compliance with the Disclosure Statement Order, the Debtors, through Prime Clerk, transmitted (a) the Confirmation Hearing Notice and (b) a Notice of Non-Voting Status (as such term is defined in the Initial Solicitation Affidavit of Service) to all Holders of Claims and Interests in Classes that were not entitled to vote on the Plan, as well as Holders of unclassified Administrative Claims and Priority Tax Claims.  See Initial Solicitation Affidavit of Service.

4.  In compliance with the Disclosure Statement Order, the Debtors, through Prime Clerk, transmitted the Confirmation Hearing Notice to all other notice parties on the creditor matrix required to be served by the Disclosure Statement Order.  See Initial Solicitation Affidavit of Service.

5.  In compliance with the Disclosure Statement Order, on October 22, 2018, the Debtors, through Prime Clerk, caused a copy of the Confirmation Hearing Notice to be published in the national edition of *USA Today* and in the *Los Angeles Times*.  See Affidavit of Publication.

6.  On November 9, 2018, the Debtors Filed (and made available on the website maintained by Prime Clerk at cases.primeclerk.com/americanapparel) the Plan Supplement, which included the following Exhibits: (a) Exhibit 1 (comprised of the following exhibits to the Plan: Exhibit 1.15, Exhibit 1.65, Exhibit 1.92, Exhibit 1.144, Exhibit III.F, and Exhibit III.K, , Exhibit 2 (Creditors' Fund Trust Agreement), and Exhibit 3 (New Operating Agreement for APP Winddown, LLC).  See *Notice of Filing of Plan Supplement* [Docket No. 1950].  The Debtors caused the Plan Supplement to be served on all parties on the Master Service List and the Rule 2002 Parties.  See *Affidavit of Service of Robert J. Rubel*, an employee at Prime Clerk, Filed on November 12, 2018 [Docket No. 1951] (the "Plan Supplement Affidavit of Service").

7.  The Confirmation Hearing Notice and the service and publication thereof provided due and proper notice of the Confirmation Hearing and all relevant dates, deadlines, procedures and other information relating to the Plan and/or the solicitation of votes thereon, including, without limitation, the Voting Deadline, the Confirmation Objection Deadline, the time, date

DOCS_DE:222052.7 03635/001

and place of the Confirmation Hearing and the release, exculpation, and injunction provisions in the Plan.

8.     All persons entitled to receive notice of the Disclosure Statement, the Plan and the Confirmation Hearing have received proper, timely and adequate notice in accordance with the Disclosure Statement Order, applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules, and have had an opportunity to appear and be heard with respect thereto.

9.     Claims and Interests in Classes 1A, 1B, 1C, 1D, 1E, 1F, 2A, 2B, 2C, 2D, 2E, and 2F are Unimpaired, and such Classes are deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. See Plan, Section II.B.2. and II.C.

10.    The Plan was voted on by the Classes of Impaired Claims that were entitled to vote pursuant to the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules and the Disclosure Statement Order (i.e., Classes 3A, 3B, 3C, 3D, 3E, 3F, 4A, 4B, 4C, 4D, 4E and 4F). See id.

11.    Prime Clerk has made a final determination of the validity of, and tabulation with respect to, all acceptances and rejections of the Plan by Holders of Claims entitled to vote on the Plan, including the amount and number of accepting and rejecting Claims in Classes 3A, 3B, 3C, 3D, 3E, 3F, 4A, 4B, 4C, 4D, 4E and 4F under the Plan pertaining to each of the applicable Debtors. See Voting Declaration at Ex. A.

12.    Each of Classes 3A, 3B, 3C, 3D, 3E, 3F, 4A, 4B, 4C, 4D, 4E and 4F pertaining to each applicable Debtor has accepted the Plan by at least two-thirds in amount and a majority in number of the Claims in such Classes actually voting. See id. at Ex. A.

13.    The Voting Declaration sets forth the tabulation of votes, as required by the Bankruptcy Code, the Bankruptcy Rules and the Disclosure Statement Order. See id.

Q.     Section 1129(a)(3) of the Bankruptcy Code. The Plan has been proposed in good faith and not by any means forbidden by law. Based on the evidence presented at the Confirmation Hearing, the Court finds and concludes that the Plan has been proposed with the legitimate and honest purpose of distributing the Debtors' assets to creditors consistent with the various settlements approved in these Chapter 11 Cases and the Bankruptcy Code. In so finding, this Court has considered the totality of the circumstances in these Chapter 11 Cases. The Plan is

- 13 -

the result of extensive good faith, arm's-length negotiations between the Debtors and certain of their principal constituencies, including the Lender Committee Parties, the Committee of Lead Lenders, the Standard General Parties, and the Creditors' Committee and reflects substantial input from the principal constituencies having an interest in these Chapter 11 Cases. Further, as described in greater detail below, the Plan's indemnification, exculpation, release and injunction provisions are consistent with sections 105, 1123(b)(6), 1129 and 1142 of the Bankruptcy Code and applicable law in this Circuit. Accordingly, the requirements of section 1129(a)(3) of the Bankruptcy Code are satisfied.

R.    Section 1129(a)(4) of the Bankruptcy Code. No payment for services or costs and expenses in or in connection with these Chapter 11 Cases, or in connection with the Plan and incident to these Chapter 11 Cases, has been or will be made by a Debtor other than payments that have been authorized by order of this Court. Pursuant to Section II.A.2.a of the Plan, and except as otherwise provided under the Plan or herein, all such payments to be made to Professionals or other entities asserting a Fee Claim for services rendered before the Effective Date will be subject to review and approval by this Court.

S.    Section 1129(a)(5) of the Bankruptcy Code. The Debtors have disclosed the identity of the officer and director of each of the Post-Confirmation Debtors as set forth in Section III.A.3 of the Plan, and such individual is the only insider that will be employed or retained by the Post-Confirmation Debtors. The compensation of such individual has been disclosed at or prior to the Confirmation Hearing. The proposed director and officer for the Post-Confirmation Debtors is qualified and the continuance in such offices by such individual is consistent with the interests of Holders of Claims and Interests and with public policy. Accordingly, the Debtors have complied with section 1129(a)(5) of the Bankruptcy Code.

- 14 -

T.    <u>Section 1129(a)(6) of the Bankruptcy Code.</u>  Section 1129(a)(6) of the Bankruptcy Code is not applicable.  The Plan does not provide for any changes in rates that require regulatory approval of any governmental agency.

U.    <u>Section 1129(a)(7) of the Bankruptcy Code.</u>  The Plan satisfies section 1129(a)(7) of the Bankruptcy Code.  The Disclosure Statement (at Section VI.B.1.a) and the Scher Declaration (1) have not been controverted by other evidence and (2) establish that each Holder of an Impaired Claim or Interest in each Impaired Class of Claims or Interests that has not accepted the Plan will, on account of such Claim or Interest, receive or retain property under the Plan having a value, as of the Effective Date, that is not less than the amount that such Holder would so receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on the Effective Date.  Accordingly, the Debtors have demonstrated that the Plan and the Modifications are in the best interests of creditors.

V.    <u>Section 1129(a)(8) of the Bankruptcy Code.</u>  Classes 1A, 1B, 1C, 1D, 1E and 1F (Other Priority Claims), and 2A, 2B, 2C, 2D, 2E and 2F (Other Secured Claims) are Unimpaired under the Plan and are deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Classes 3A, 3B, 3C, 3D, 3E and 3F (Prepetition Term Loan Secured Claims), and 4A, 4B, 4C, 4D, 4E and 4F (General Unsecured Claims) are Impaired by the Plan and have voted to accept the Plan in accordance with sections 1126(c) and (d) of the Bankruptcy Code, as established by the Voting Declaration.  Classes 5A, 5B, 5C, 5D, 5E and 5F (Intercompany Claims), and 6A, 6B, 6C, 6D, 6E and 6F (Interests) are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Nevertheless, as more fully explained below, the Plan is confirmable because it does not discriminate unfairly and is fair and

- 15 -

equitable with respect to such non-accepting Classes of Claims and Interests and thus satisfies section 1129(b)(1) of the Bankruptcy Code.

W.    Section 1129(a)(9) of the Bankruptcy Code. The Plan provides treatment for Administrative Claims, Priority Tax Claims and Other Priority Claims that is consistent with the requirements of section 1129(a)(9) of the Bankruptcy Code.

X.    Section 1129(a)(10) of the Bankruptcy Code. Section 1129(a)(10) of the Bankruptcy Code has been satisfied because, as to each Debtor, at least one Class of the Impaired Claims (i.e., Classes 3A, 3B, 3C, 3D, 3E, 3F, 4A., 4B, 4C, 4D, 4E and 4F) has voted to accept the Plan after excluding the votes of any insiders. See Voting Declaration at Ex. A. Therefore, section 1129(a)(10) of the Bankruptcy Code is satisfied because at least one Class of Claims Impaired under the Plan with respect to each applicable Debtor has accepted the Plan, determined without including any acceptance of the Plan by any insider.

Y.    Section 1129(a)(11) of the Bankruptcy Code. The Plan provides for the liquidation of the Debtors' assets and, accordingly, no further reorganization of the Debtors is contemplated.   Based on the evidence proffered or adduced at or prior to the Confirmation Hearing, in the Confirmation Brief, and in the Disclosure Statement, the Debtors have sufficient funds available as of the Effective Date to pay all claims and expenses that are required to be paid on the Effective Date under the Plan (including Administrative Claims and Priority Tax Claims), and to fund the Creditors Fund Trust to pay claims as appropriate pursuant to the Creditors' Fund Trust Agreement.  Accordingly, the Plan is the feasible.  The Plan, therefore, satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code.

Z.    Section 1129(a)(12) of the Bankruptcy Code. The Plan provides that Administrative Claims for fees payable pursuant to section 1930 of title 28 of the United States

- 16 -

Code will be paid by the Debtors in Cash equal to the amount of such Administrative Claims on or before the Effective Date. After the Effective Date, all fees payable pursuant to section 1930 of title 28 of the United States Code will be paid by the Post-Confirmation Debtors until the earlier of the conversion or dismissal of the applicable Chapter 11 Case under section 1112 of the Bankruptcy Code, or the entry of a final decree.

      AA.    <u>Section 1129(a)(13) of the Bankruptcy Code.</u>  The Debtors do not have any retiree benefits within the meaning of section 1114 of the Bankruptcy Code, and thus section 1129(a)(13) of the Bankruptcy Code does not apply.

      BB.    <u>Sections 1129(a)(14), (15) and (16) of the Bankruptcy Code.</u> Sections 1129(a)(14), (15) and (16) of the Bankruptcy Code do not apply to these Chapter 11 Cases as the Debtors owe no domestic support obligations, are not individuals and are not nonprofit corporations.

      CC.    <u>Section 1129(b) of the Bankruptcy Code.</u>  Although Classes 5A, 5B, 5C, 5D, 5E, 5F, 6A, 6B, 6C, 6D, 6E, and 6F are deemed to have rejected the Plan for purposes of section 1129(a)(8) of the Bankruptcy Code, the Plan is confirmable pursuant to section 1129(b) of the Bankruptcy Code notwithstanding such rejection because, based upon the record before this Court and the treatment provided to such Claims and Interests, the Plan does not discriminate unfairly against, and is fair and equitable with respect to, such Classes of Claims and Interests, and the Plan satisfies all the requirements for confirmation set forth in section 1129(a) of the Bankruptcy Code, except section 1129(a)(8) of the Bankruptcy Code. The evidence in support of Confirmation of the Plan proffered or adduced by the Debtors at, or prior to, or in declarations filed in connection with, the Confirmation Hearing regarding the Debtors' classification and treatment of Claims and Interests and the requirements for confirmation of the

- 17 -

Plan under section 1129(b) of the Bankruptcy Code is reasonable and has not been controverted by other credible evidence.

DD.    <u>Section 1129(c) of the Bankruptcy Code.</u> The Plan (including previous versions thereof), supersedes any other plan filed in this case. The Debtors seek confirmation of the Plan. No party other than the Debtors has proposed a plan. The Plan, therefore, satisfies the requirements of section 1129(c) of the Bankruptcy Code.

EE.    <u>Section 1129(d) of the Bankruptcy Code.</u> The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933, as amended. Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

FF.    <u>Section 1129(e) of the Bankruptcy Code.</u> None of these Chapter 11 Cases is a small business case within the meaning of the Bankruptcy Code. Accordingly, section 1129(e) of the Bankruptcy Code is inapplicable to these Chapter 11 Cases.

GG.    <u>Satisfaction of Confirmation Requirements.</u> Based upon the foregoing, and all other pleadings and evidence proffered or adduced at or prior to the Confirmation Hearing, the Plan and the Debtors satisfy all of the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

HH.    <u>The Good Faith of the Supporting Parties.</u> Each of the Lender Committee Parties, the Committee of Lead Lenders, and the Standard General Parties and their respective officers, directors, partners, managers, associates, employees, affiliates, agents, representatives, advisors, members and professionals negotiated at arm's-length with the Creditors' Committee and the Debtors and have acted in good faith in connection with these Chapter 11 Cases including, without limitation, in providing for use of their collateral to administer these Chapter

11 Cases and to make certain payments contemplated by the Plan and with respect to the Lender

Committee Parties, waiving a distribution on account of any Claim in Class 4.  Such efforts have

allowed to the Debtors to avoid conversion to chapter 7 and conclude these Chapter 11 Cases in

an efficient manner to the benefit of all stakeholders.

## FINDINGS REGARDING IMPLEMENTATION OF THE PLAN

II.    Implementing Documents.  All documents and agreements necessary to

implement the Plan, including, but not limited to, those contained in the Plan Supplement, and all

other relevant and necessary documents are essential elements of the Plan and have been

negotiated in good faith and at arm's-length with the Creditors' Committee, the Lender

Committee Parties, the Committee of Lead Lenders, and the Standard General Parties, and their

respective officers, directors, partners, managers, associates, employees, affiliates, agents,

representatives, advisors, members and professionals, and shall, upon completion of

documentation and execution, be valid, binding and enforceable agreements and not be in

conflict with any federal, state or local law.  The Debtors have exercised reasonable business

judgment in determining which agreements to enter into and have provided sufficient and

adequate notice of such documents and agreements.  The Debtors or Post-Confirmation Debtors,

as applicable, are authorized, without any further notice to, or action, order or approval of, this

Court, to finalize, execute and deliver all agreements, documents, instruments and certificates

relating to the Plan and to perform their obligations under such agreements, documents,

instruments and certificates.

JJ.    Treatment of Executory Contracts Or Unexpired Leases.  Pursuant to

sections 365 and 1123(b)(2) of the Bankruptcy Code, upon the occurrence of the Effective Date,

Section IV of the Plan provides for the rejection or assumption of certain Executory Contracts or

Unexpired Leases.  The Debtors' determinations regarding the assumption or rejection of

- 19 -

Executory Contracts or Unexpired Leases are based on and within the sound business judgment of the Debtors, are necessary to the implementation of the Plan and are in the best interests of the Debtors, their estates, Holders of Claims and other parties in interest in these Chapter 11 Cases. Exhibit III.L to the Plan (as the same may be amended, modified or supplemented from time to time) identifies any Insurance Policies that insurers have asserted are Executory Contracts or Unexpired Leases and that, if determined by the Court to be Executory Contracts or Unexpired Leases, are to be assumed.

KK.    Jurisdiction With Respect to Release, Exculpation and Injunction Provisions. This Court has jurisdiction under sections 157 and 1334(a) and (b) of title 28 of the United States Code to approve the releases, exculpations and injunctions set forth in Section VI of the Plan. Section 105(a) of the Bankruptcy Code permits issuance of the injunctions and approval of the releases and exculpations set forth in Section VI of the Plan.

LL.    Releases, Exculpation and Injunction. Based on the record before this Court, including, but not limited to, the evidence proffered, adduced, and/or presented at the Confirmation Hearing, which is reasonable, persuasive, and credible, the release, exculpation, and injunction provisions set forth in the Plan (1) confer substantial benefits on the Debtors' Estates, (2) are fair, equitable, and reasonable, (3) are in the best interests of the Debtors, their Estates, and parties in interest, (4) are an integral element of the settlements and transactions incorporated into the Plan and are essential to the formulation and implementation of the Plan; (5) are supported by and given in exchange for good and valuable consideration, (6) are given and made after due notice and opportunity for hearing, (7) are critical to the overall objectives of the Plan to finally resolve all Claims and Causes of Action among or against the parties in interest in these Chapter 11 Cases, (7) do not relieve any party of liability arising out of an act or

omission constituting gross negligence, actual fraud, or willful misconduct, and (8) are consistent with the Bankruptcy Code and applicable law. Accordingly, this Court finds that (1) the release of potential Claims belonging to the Debtors or their Estates pursuant to the Plan are part of a fair and a valid exercise of the Debtors' business judgment, (2) the third-party releases contemplated by Section VI.C of the Plan are fair, reasonable and appropriate under the circumstances of these Chapter 11 Cases, and (3) the release, exculpation and injunction provisions set forth in the Plan were proposed in good faith, are fair, reasonable, and appropriate under the circumstances, are appropriately tailored, are intended to promote finality and prevent parties from attempting to circumvent the Plan's terms and are consistent with the Bankruptcy Code and applicable law in light of the extraordinary circumstances of these cases and the substantial contribution of all Released Parties and Exculpated Parties and, therefore, are valid and binding. The third-party releases and the related injunction are necessary to the proposed reorganization and were extensively disclosed and explained in the Disclosure Statement, the Plan, and the Ballots. The failure to implement the injunctions, releases, and exculpation would seriously impair the Debtors' ability to confirm and consummate the Plan.

      MM.   <u>Arch Settlement</u>. In accordance with Bankruptcy Rule 9019 and section 1123(b)(3) of the Bankruptcy Code, the provisions of the Arch Settlement constitute a good-faith compromise of the Arch Prepetition Claims and Arch Administrative Claim (each as defined in the Arch Settlement). The compromise and settlement of such claims and the payment of the Arch Allowed Administrative Claim and the releases exchanged pursuant to the Arch Settlement are in the best interests of the Debtors and their Estates and are fair, equitable and reasonable.

      NN.   <u>Retention of Jurisdiction.</u> Subject to Article IX of the Plan, this Court may properly, and upon the Effective Date shall, retain exclusive jurisdiction over all matters

arising out of, and related to, these Chapter 11 Cases and the Plan, and any other matter or proceeding that is within this Court's jurisdiction pursuant to 28 U.S.C. § 1334 or 28 U.S.C. § 157.

OO.    <u>Satisfaction of Conditions to Confirmation.</u>  Each of the conditions precedent to Confirmation set forth in Section VII.A of the Plan has been satisfied or waived in accordance with the provisions of the Plan.

PP.    <u>Objections.</u>  All parties have had a full and fair opportunity to litigate all issues raised, or which might have been raised, in the Objection , and the Objections have been fully considered by this Court.

ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED AND DECREED, AS FOLLOWS:

## A.    Confirmation of Plan

1.    The Plan and each of its provisions, the Plan Supplement and any related document (whether or not specifically approved or referred to herein) are confirmed in their entirety in each and every respect, pursuant to section 1129 of the Bankruptcy Code; <u>provided</u>, <u>however</u>, that if there is any direct conflict between the terms of the Plan and the terms of this Confirmation Order, the terms of this Confirmation Order shall control solely to the extent of the conflict.  The terms of the Plan, the Plan Supplement, and the exhibits are incorporated herein by reference, and are an integral part of this Order.  The terms of the Plan, the Plan Documents, all exhibits thereto, and all other relevant and necessary documents shall be effective and binding as of the Effective Date.

2.    As set forth in the record at the Confirmation Hearing, the Objections have been consensually resolved and are hereby deemed withdrawn.  Any objections or responses to Confirmation of the Plan and any reservation of rights contained therein, including the

- 22 -

Objections, that (a) have not been sustained by the Court, (b) have not been withdrawn, waived

or settled prior to the entry of this Confirmation Order or (c) are not cured by the relief granted

herein are hereby overruled or denied in their entirety and on their merits with prejudice, and all

withdrawn objections or responses are hereby deemed withdrawn with prejudice.

        3.      The Effective Date of the Plan shall occur on the date determined by the

Debtors when the conditions set forth in Section VII.B of the Plan have been satisfied or, if

applicable, have been waived in accordance with Section VII.C of the Plan.

**B.      Effects of Confirmation**

        4.      Subject to the provisions of Section VII.B of the Plan and, in accordance

with section 1141(a) of the Bankruptcy Code and notwithstanding any otherwise applicable law,

upon the occurrence of the Effective Date, the terms of the Plan and this Confirmation Order

shall be binding upon, and inure to the benefit of:  (a) the Debtors; (b) the Post-Confirmation

Debtors; (c) any and all Holders of Claims or Interests (irrespective of whether such Claims or

Interests are Impaired under the Plan or whether the Holders of such Claims or Interests

accepted, rejected or are deemed to have accepted or rejected the Plan); (d) any other person

giving, acquiring or receiving property under the Plan; (e) any and all non-Debtor parties to

Executory Contracts or Unexpired Leases with any of the Debtors; (f) the Creditors' Fund

Trustee; (g) the Litigation Trustee; (h) any other party in interest in these Chapter 11 Cases; and

(i) the respective heirs, executors, estates, administrators, trustees, affiliates, officers, directors,

agents, representatives, attorneys, beneficiaries, guardians, nominees, successors, or assigns, if

any, of any of the foregoing.  All settlements, compromises, releases, waivers, discharges,

exculpations and injunctions set forth in the Plan shall be, and hereby are, effective and binding

on all individuals, firms, corporations, partnerships, limited liability companies, joint ventures,

associations, trusts, unincorporated organizations or other entities (each individually, a "Person")

who may have had standing to assert any settled, released, discharged, exculpated or enjoined

Claim or Causes of Action, and no other Person or entity shall possess such standing to assert

such Claim or Causes of Action after the Effective Date.

**C.       Plan Classification Controlling**

5.       The terms of the Plan shall solely govern the classification of Claims and

Interests for purposes of distributions thereunder.  The classifications set forth on the Ballots

tendered to or returned by Holders of Claims in connection with voting on the Plan (a) were set

forth thereon solely for purposes of voting to accept or reject the Plan, (b) do not necessarily

represent, and in no event shall be deemed to modify or otherwise affect, the actual classification

of Claims and Interests under the Plan for distribution purposes, (c) may not be relied upon by

any Holder of a Claim or Interest as representing the actual classification of such Claim or

Interest under the Plan for distribution purposes and (d) shall not be binding on the Debtors

except for voting purposes.

**D.       Approval of Settlements**

6.       <u>Comprehensive Settlement of Claims and Controversies.</u>  Pursuant to

section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration of the

distributions and other benefits provided under the Plan, the provisions of the Plan, including the

releases set forth in Sections VI.B and VI.C constitute a good-faith compromise and settlement

of all Claims, disputes, or controversies relating to the rights that a Holder of a Claim may have

with respect to any Allowed Claim or any distribution to be made pursuant to the Plan on

account of any such Allowed Claim.

7.       <u>Arch Settlement</u>.  Pursuant to Bankruptcy Rule 9019 and section

1123(b)(3) of the Bankruptcy Code, the Arch Settlement (including the releases set forth therein)

set forth in the agreement attached as Exhibit 1.15 to the Plan (as set forth in the Plan

- 24 -

Supplement) constitutes a good faith compromise and settlement of all Claims asserted by Arch and is approved in all respects. The terms of the Arch Settlement are incorporated into this Order as if fully set forth herein. The Debtors are authorized and directed to implement the Arch Settlement according to its terms.. The payments in cash from the Settlement Escrow and the Post-Confirmation Debtors to Arch Insurance Company on account of the Arch Allowed Administrative Claim, pursuant to Sections II.A.1.a and III.C of the Plan are approved.

8.      Distribution From the Settlement Escrow. The distribution of the Settlement Escrow as contemplated by the Plan is consistent with the UCC-LT Settlement and is approved, and the Post-Confirmation Debtors are authorized and directed to make all distributions contemplated by Section III.C of the Plan on the Effective Date, or as soon thereafter as is practicable..

E.      **Plan Implementation**

9.      In accordance with section 1142 of the Bankruptcy Code and section 303 of the Delaware General Corporation Law and any comparable provisions of the business corporation law of any other state, country or subdivision thereof (collectively, the "Reorganization Effectuation Statutes"), without further action by this Court or the stockholders, members, managers, partners or directors of any Debtor or Post-Confirmation Debtor, the Debtors, the Post-Confirmations Debtors, the Chief Wind-Down Officer, and any other officer of the appropriate Debtor or Post-Confirmation Debtor, are authorized to: (a) take any and all actions necessary or appropriate to implement, effectuate and consummate the Plan, this Confirmation Order or the transactions contemplated thereby or hereby, including, without limitation, those transactions identified in Section III of the Plan; and (b) execute and deliver, adopt or amend, as the case may be, any contracts, instruments, releases, agreements and documents necessary to implement, effectuate and consummate the Plan, including without

- 25 -

limitation, those contracts, instruments, releases, agreements and documents identified in Section III of the Plan.

10.    To the extent that, under applicable non-bankruptcy law, any of the foregoing actions would otherwise require the consent or approval of the stockholders, managers, members, partners or directors of any of the Debtors or Post-Confirmation Debtors, this Confirmation Order shall, pursuant to section 1142 of the Bankruptcy Code and the Reorganization Effectuation Statutes, constitute such consent or approval, and such actions are deemed to have been taken by unanimous action of the directors, members, managers, partners or stockholders of the appropriate Debtor or Post-Confirmation Debtor.

11.    Each federal, state, commonwealth, local, foreign or other governmental agency is hereby directed and authorized to accept any and all documents and instruments necessary or appropriate to effectuate, implement or consummate the transactions contemplated by the Plan and this Order.

12.    All transactions effected by the Debtors during the pendency of these Chapter 11 Cases from the Petition Date through the Confirmation Date are approved and ratified.

13.    The consummation of the Plan and the implementation thereof or the assumption of any Executory Contract or Unexpired Lease shall not constitute a change in ownership or change in control under any employee benefit plan or program, financial instrument, loan or financing agreement, Executory Contract or Unexpired Lease or contract, lease or agreement in existence on the Effective Date to which a Debtor is a party.

DOCS_DE:222052.7 03635/001

**F.      Corporate Action; Winding-Up of Affairs**

14.      The Operating Agreement for APP Winddown, LLC, as set forth in the Plan Supplement is approved.  The Operating Agreement may be further amended from time to time in accordance with its terms.

15.      Except as otherwise provided in the Plan:  (a) as of the Effective Date, all Debtors other than the Post-Confirmation Debtors shall be deemed dissolved for all purposes and their business operations withdrawn for all purposes without any necessity of filing any document, taking any further action or making any payment to any governmental authority in connection therewith, *provided, however*, without the need for further approval, the Post-Confirmation Debtors, in their discretion, may execute and file documents and take other action as may be deemed appropriate relating to the dissolution of the Debtors, and in such event, all applicable regulatory or governmental agencies shall take all steps necessary to allow and effect the prompt dissolution of the subject Debtor as provided in the Plan, without the payment of any fee, franchise or similar tax, or charge and without need for the filing of reports or certificates; (b) the Post-Conformation Debtors shall be deemed dissolved, and their business operations withdrawn and all existing interests extinguished and cancelled, upon the Filing by the Post-Confirmation Debtors of a notice that the Post-Confirmation Debtor Functions have been completed or otherwise satisfied; provided, however, without the need for further approval, the Post-Confirmation Debtors, in their discretion, may execute and file documents and take all other actions as may be deemed appropriate relating to their dissolution under applicable state laws, and in such event, all applicable regulatory or governmental agencies shall take all steps necessary to allow and effect the prompt dissolution of the Post-Confirmation Debtors as provided herein, without the payment of any fee, franchise or similar tax, or charge and without the need for filing of reports or certificates.

- 27 -

16.     Except as otherwise provided in the Plan (including with respect to the Liens of the Prepetition Term Loan Lenders and the vesting of the Creditors' Fund Trust Assets in the Creditors' Fund Trust), on the Effective Date, all property of the Debtors' Estates, including, without limitation, the Remaining Assets, shall vest in APP Winddown as a Post-Confirmation Debtor (or, solely with respect to any post-petition contracts entered into by APP Shipping Winddown's Estate, in APP Shipping Winddown as a Post-Confirmation Debtor), in each case, free and clear of all Claims, Liens, charges, other encumbrances, Interests or other interests.

17.     On and after the Effective Date, the Post-Confirmation Debtors shall carry out the Post-Confirmation Debtor Functions, and may take such actions without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than any restrictions expressly imposed by the Plan or this Confirmation Order.  Without limiting the foregoing, each Post-Confirmation Debtor may pay the charges that it incurs on or after the Effective Date for appropriate Professionals' fees, disbursements, expenses or related support services (including fees and expenses relating to the preparation of Professionals' fee applications) without application to, or the approval of, this Court.

**G.     Plan Distributions**

18.     On and after the Effective Date, distributions on account of Allowed Claims and the resolution and treatment of Disputed Claims shall be effectuated pursuant to Sections II and V of the Plan.  The record date for distributions shall be the date of entry of this Confirmation Order.

**H.     Approval of Releases and Exculpations of Released and Exculpated Parties**

19.     The releases and exculpations as set forth in Sections VI.B, VI.C, VI.D and VI.E of the Plan are approved in all respects, are incorporated herein in their entirety, are so

- 28 -

ordered and shall be immediately effective on the Effective Date without further order or action

of this Court, or of any of the parties to such releases or exculpations or any other party;

provided, however, that the releases and exculpations set forth in the Plan shall have no effect on

the liability of any Released Party or Exculpated Party that results from any such act or omission

that is determined in a Final Order to have constituted gross negligence, actual fraud or willful

misconduct.

**I.      Injunction**

      20.      From and after the Effective Date, (a) all entities are permanently enjoined

from commencing, conducting, or continuing, in any manner, whether directly or indirectly, any

cause of action released or to be released pursuant to the Plan or this Confirmation Order; (b) to

the extent of the releases and exculpation granted in Sections VI.C, VI.D., and VI.F of the Plan,

the Releasing Parties shall be permanently enjoined from commencing, conducting, or

continuing in any manner against the Released Parties and the Exculpated Parties and their assets

and properties, as the case may be, any suit, action or other proceeding, on account of or

respecting any Claim, demand, liability, obligation, debt, right, Cause of Action, remedy, or

other interest released or to be released pursuant to Article VI of the Plan.  The injunction

pursuant to Section VI.F of the Plan is approved in all respects and shall be valid and enforceable

immediately upon the Effective Date.

**J.      Limited SEC Carveout From Non-Debtor Releases and Injunctions**

      21.      Notwithstanding any language to the contrary contained in the Plan or this

Confirmation Order, no provision of the Plan or this Confirmation Order shall (i) preclude the

SEC from enforcing its police or regulatory powers; or (ii) enjoin the SEC from commencing or

continuing any claims, Causes of Action, proceedings or investigations against any non-Debtor

Entities or any non-Debtor Persons in any forum or release any claims of the SEC against such non-Debtor Entities or any non-Debtor Persons.

## K.    Preservation of Rights of Action

22.    Unless any Causes of Action are expressly waived, relinquished, released, compromised, or settled in the Plan, the Settlements, or any Final Order (including, without limitation, the Confirmation Order, Final DIP Order, Final Cash Collateral Order and the Settlement Orders), the Debtors and Post-Confirmation Debtors expressly reserve all Causes of Action for later adjudication. The reservation includes, without limitation, a reservation by the Debtors and Post-Confirmation Debtors of any Causes of Action not specifically identified in the Plan or Disclosure Statement, or of which the Debtors may presently be unaware, or which may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time or facts or circumstances that may change or be different from those the Debtors now believe to exist and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise), or laches will apply to such Causes of Action upon or after the Confirmation of the Plan based on the Disclosure Statement, the Plan or this Confirmation Order, except where such claims and/or defenses have been expressly waived, relinquished, released, compromised, or settled in the Plan, the Settlements or by Final Order. Following the Effective Date, with the consent of the Required Lenders or, in the case of WCCC Causes of Action, subject to Section III.I, the Post-Confirmation Debtors may assert, compromise or dispose of the Causes of Action without further notice to Creditors or Interest Holders or authorization of the Bankruptcy Court, except as otherwise expressly provided in the Plan.

23.    APP Winddown, as a Post-Confirmation Debtor, shall be the successor to and representative of the Estate of each of the Debtors appointed for purposes of section

1123(b)(3)(B) of the Bankruptcy Code, including, without limitation, with respect to Avoidance Actions, WCCC Causes of Action, and any other Cause of Action. Except as provided in the Plan or in any contract, instrument, release or other agreement entered into or delivered in connection with the Plan, in accordance with section 1123(b) of the Bankruptcy Code, APP Winddown, as a Post-Confirmation Debtor, will retain and may enforce any claims, demands, rights and Causes of Action (including Avoidance Actions and WCCC Causes of Action) that any Estate may hold against any Person to the extent not released under the Plan, the Settlements, or any Final Order. A nonexclusive schedule of currently pending actions and claims brought by one or more Debtors is set forth on Exhibit III.F to the Plan. In accordance with and subject to any applicable law, the Debtors' inclusion or failure to include any claim, demand, right or Cause of Action on Exhibit III.F to the Plan shall not be deemed an admission, denial, limitation or waiver of any claims, demands, rights or Causes of Action that any Debtor or Estate may hold against any entity. The Debtors have preserved all such claims, demands, rights or Causes of Action (except to the extent any such claim is specifically waived or released under the Plan, including pursuant to Article VI of the Plan).

**L.      Post-Effective Date Personnel**

24.      In addition to (i) the exculpation provided in Section VI.D of the Plan and (ii) the limitations of liability for the Creditors' Fund Trustee provided in Section III.B.6 of the Plan, the directors, officers, managers, and employees of the Post-Confirmation Debtors serving after the Effective Date shall incur no personal liability to any Entity for any act or ommission in connection with, arising out of, or relating to, their administration of the Plan and distributions under the Plan, any reserves created under the Plan, or in connection with the affairs of the Post-Confirmation Debtors (including, without limitation, any of the Post-Confirmation Debtor Functions), unless related to an action or omission that is determined in a Final Order to have

- 31 -

constituted gross negligence, fraud, illegality or willful misconduct. The Post-Confirmation Debtors shall indemnify such directors, officers, managers and employees serving after the Effective Date for any losses, claims, costs, damages or liabilities resulting from such person's service in such a capacity at any time from and after the Petition Date, unless related to an action or omission that is determined in a Final Order to have constituted gross negligence, fraud, illegality or willful misconduct. The Bankruptcy Court shall retain exclusive jurisdiction over any action or proceeding in connection with, arising out of, or related to such service as directors, officers, or employees of the Post-Confirmation Debtors (from and after the Effective Date). No action or proceeding may be commenced against the directors, officers, or employees of the Post-Confirmation Debtors serving from and after the Effective Date in connection with, arising out of, or relating to their service as directors, officers, or employees from and after the Effective Date without approval of the Bankruptcy Court.

**M.    Approval of Creditors' Fund Trust**

25.    The formation of the Creditors' Fund Trust pursuant to Section III.B of the Plan and the Litigation Trust Agreement is approved. The Creditors' Fund Trust shall have a separate existence from the Debtors and Post-Confirmation Debtors. On the Effective Date, the Creditors' Fund Trust Assets will be transferred or issued to, and vest in, the Creditors' Fund Trust.

26.    The Creditors' Fund Trust and the Creditors' Fund Trustee are authorized and empowered to take the following actions, and any other actions that the Creditors' Fund Trustee determines to be necessary or appropriate to implement the Creditors' Fund Trust, all without further order of this Court: (i) adopt, execute, deliver or file all plans, agreements, certificates and other documents and instruments necessary or appropriate to implement the

Creditors' Fund Trust; (ii) perform the Creditors' Fund Trust Functions; (iii) retain Disbursing Agents and professionals and other Entities; and (iv) dissolve the Creditors' Fund Trust.

27. <u>Section 1145 Exemption</u>. If the rights arising under the Creditors' Fund Trust Agreement (including any interests in the Creditors' Fund Trust) in favor of any Holder of a General Unsecured Claim or Unbudgeted Administrative Claim are deemed to be "securities," the exemption from registration under section 1145 of the Bankruptcy Code is intended to be applicable to such securities.

**N.    Section 1146 Exemption**

28. Pursuant to section 1146(a) of the Bankruptcy Code, the transfer of any property under the Plan or the making or delivery of any instrument of transfer pursuant to, in implementation of, or as contemplated by, the Plan or the vesting, transfer or sale of any real or personal property of the Debtors pursuant to, in implementation of, or as contemplated by, the Plan shall not be taxed under any state or local law imposing a stamp tax, transfer tax, or similar tax or fee. Consistent with the foregoing, each recorder of deeds or similar official for any county, city or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to this Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax or similar tax.

**O.    Executory Contracts, Unexpired Leases, and Insurance Policies**

29. <u>General</u>. The Debtors and Post-Confirmation Debtors are authorized to assume or reject their Executory Contracts or Unexpired Leases in accordance with Sections III.L and IV of the Plan. This Confirmation Order shall constitute a finding that such assumption or rejection, as applicable, is in the best interests of the Debtors, their respective estates and other parties in interest.

30.    <u>Insurance Policies</u>.  The Insurance Policy provisions of Section III.L of the

Plan are approved in all respects.  All Insurance Policies shall remain in full force and effect

according to their terms and the coverage obligations of the insurers and third party

administrators under such Insurance Policies shall continue following the Effective Date

(including any obligations to pay, defend and process insured claims).  Nothing in the Plan shall

affect the right of any insurer or third party administrator under an Insurance Policy to File a

Claim, consistent with the Claims Bar Date, for amounts due by the Debtors under such policy.

31.    <u>Bar Date for Rejection Claims.</u>  If the rejection of an Executory Contract

or Unexpired Lease pursuant to the Plan gives rise to a Claim by the other party or parties to

such contract or lease, such Claim shall be forever barred and shall not be enforceable against the

Debtors, the Estates, the Creditors' Fund Trust and the Post-Confirmation Debtors unless a Proof

of Claim is filed with the Bankruptcy Court (or with the Notice and Claims Agent in the manner

set forth in this Confirmation Order) by no later than 30 days after the Effective Date.

32.    <u>Postpetition Contracts and Leases.</u>  Nothing in the Plan is intended to

affect the validity of contracts and leases entered into by the Debtors on or after the Petition

Date, or the rights of the Debtors thereunder, which shall remain in full force and effect after the

Effective Date in accordance with their terms.

**P.    Claims Bar Dates**

33.    <u>Second Administrative Claim Bar Date Provisions.</u>  Unless previously

Filed or except as required to have been filed by the First Administrative Expense Bar Date

pursuant to the Bar Date Order or as governed in another order of the Court, requests for

payment of Administrative Claims must be Filed and served on the parties identified in Section

X.K of the Plan (other than the Creditors' Committee) and the Creditors' Fund Trustee no later

than thirty (30) days after the Effective Date.  Filings of such requests shall be made with the

- 34 -

Notice and Claims Agent either (a) electronically with Prime Clerk via the interface available at

https://casesprimeclerk.com/AmericanApparel/EPOC-Index or (b) via U.S. mail or other hand

delivery method to:  APP Winddown, LLC (f/k/a American Apparel, LLC) Claims Processing

Center, c/o Prime Clerk LLC, 830 3rd Avenue, 3rd Floor, New York, NY  10022 (such requests

shall not be made, and will not be deemed Filed if made by, facsimile or electronic submission).

Any Holder of an Administrative Claim who was not required to File proof of such

Administrative Claim or a request for payment thereof pursuant to the Bar Date Order shall be

required to file a request for payment of such Administrative Claim by the Second

Administrative Expense Bar Date.  Any Holders of Administrative Claims that were or are

required to File and serve a request for payment of Administrative Claims and that did not or do

not File and serve such a request by the applicable bar date will be forever barred from asserting

such Administrative Claims against the Debtors, the Post-Confirmation Debtors, or their

respective property, or the Creditors' Fund Trust, and such Administrative Claims will be

deemed Disallowed as of the Effective Date and not entitled to payment under the Plan.

Objections to the requests for payment of Administrative Claims must be Filed and served on the

parties identified in Section X.K (other than the Creditors' Committee), the Creditors' Fund

Trustee and the requesting party no later than the latest of (i) 120 days after the Effective Date,

(ii) 60 days after such request is Filed, and (iii) such date as may be agreed between the Post-

Confirmation Debtors and the Holder of an Administrative Claim, in each case, as the same may

be extended, for cause, by the Bankruptcy Court upon request of the Post-Confirmation Debtor.

Nothing herein or in the Plan shall waive, extend or lengthen the applicable Claims Bar Date for

the Holder of any prepetition Claim or Administrative Claim subject to a Claims Bar Date

established by any Bankruptcy Court order.

DOCS_DE:222052.7 03635/001

34.    <u>Professional Compensation.</u>  Professionals or other entities asserting a Fee

Claim for services rendered before the Effective Date must File and serve on the parties

identified in Section X.K and such other entities who are designated by the Bankruptcy Rules,

the Fee Order, this Confirmation Order or other order of the Bankruptcy Court an application for

final allowance of such Fee Claim no later than 30 days after the Effective Date; *provided,*

*however*, that any Professional who may receive compensation or reimbursement of expenses

pursuant to the Ordinary Course Professionals Order may continue to receive such compensation

and reimbursement of expenses for services rendered before the Effective Date pursuant to the

Ordinary Course Professionals Order without further Bankruptcy Court review or approval

(except as provided in the Ordinary Course Professionals Order); *provided further*, that any

Professional retained by the Creditors' Committee may receive payment of any outstanding Post-

Settlement and Designated UCC Fees from Creditors' Fund Trust after the Effective Date to the

extent such amounts are payable in accordance with the Fee Order.  Except as otherwise agreed

to by the Holder of a Fee Claim, objections to any Fee Claim must be Filed and served on the

parties identified in Section X.K and the requesting Professional by 60 days after the Effective

Date or such other period of limitation as may be specifically fixed by a Final Order for

objecting to such Fee Claims.

**Q.    Statutory Fees Payable Pursuant to 28 U.S.C. § 1930**

35.    All outstanding amounts due under 28 U.S.C. § 1930 that have not been

paid shall be paid by the Debtors on or before the Effective Date.  Thereafter, the Post-

Confirmation Debtors shall pay any statutory fees due pursuant to 28 U.S.C. § 1930(a)(6) and

such fees shall be paid until entry of a final decree or an order converting or dismissing the

Chapter 11 Cases.

- 36 -

36.     If the Post-Confirmation Debtors provide the Creditors' Fund Trustee with notice that the Post-Confirmation Debtors are prepared to close one or more of the Chapter 11 Cases, and the Creditors' Fund Trustee requests that one or more of such cases remain open, the Creditors' Fund Trust shall reimburse the Post-Confirmation Debtors for the fee due in each Chapter 11 Case that remains open at the request of the Creditors' Fund Trustee.

37.     With respect to the Prior Cases, the Post-Confirmation Debtors shall pay any statutory fees due pursuant to 28 U.S.C. § 1930(a)(6) and such fees shall be paid until entry of a final decree or an order converting or dismissing the Prior Cases.   If the Post-Confirmation Debtors provide the Litigation Trustee with notice that the Post-Confirmation Debtors are prepared to close one or more of the Chapter 11 Cases, and the Litigation Trustee requests that one or more of such cases remain open, the Litigation Trust shall reimburse the Post-Confirmation Debtors for the fee due in each Prior Case that remains open at the request of the Litigation Trustee.

**R.      Binding Effect of Prior Orders**

38.     Except as otherwise provided in the Plan or this Confirmation Order, pursuant to section 1141 of the Bankruptcy Code, effective as of the Confirmation Date, but subject to the occurrence of the Effective Date, all prior orders entered in these Chapter 11 Cases, all documents and agreements executed by the Debtors as authorized and directed thereunder and all motions or requests for relief by the Debtors pending before this Court as of the Effective Date shall be binding upon and shall inure to the benefit of the Debtors, the Post-Confirmation Debtors and their respective successors and assigns.

**S.      Governing Law**

39.     Except to the extent that (a) the Bankruptcy Code or other federal law is applicable or (b) an exhibit or schedule to the Plan or any agreement entered into in connection

- 37 -

with the Plan (including the Creditors' Fund Trust Agreement) provides otherwise (in which case the governing law specified therein shall be applicable to such exhibit, schedule or agreement), the rights, duties and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to the principles of conflicts of laws that would that would require application of the laws of another jurisdiction.

## T.    Miscellaneous Provisions

40.    AIG Parties Settlement. The AIG Parties (as defined below) shall have an Allowed Other Secured Claim in the amount of $28,014,362, which is the AIG Parties' cash collateral in their possession (the "Allowed AIG Other Secured Claim") on account of the AIG WC Program Agreements.  The treatment for such Allowed AIG Other Secured Claim under the Plan shall be that the AIG Parties' shall retain their collateral with no further payment by the Debtors, their Estates, or the Post-Confirmation Debtors with respect to the Allowed AIG Other Secured Claim.  Notwithstanding anything to the contrary in the Plan, this Confirmation Order or otherwise, the AIG Parties are hereby authorized to apply, use, and retain any or all collateral provided to the AIG Parties by or on behalf of the Debtors (or their predecessors) at any time with respect to any obligation under the AIG WC Program Agreements (as defined below).  To the extent that the AIG Parties are owed any amounts in excess of the collateral described above, such amounts shall constitute a General Unsecured Claim and the AIG Parties shall have the right to assert such claim and other parties shall have the right to object thereto.  The AIG Parties agree that other than the Allowed AIG Other Secured Claim in the amount of their collateral described above and any General Unsecured Claim they may have, the AIG Parties shall not assert any administrative expense claim, any priority claim, or any other secured claim against the Debtors, their Estates, the Post-Confirmation Debtors, or the Creditors' Fund Trust.  Nothing

- 38 -

contained in the Plan, this Confirmation Order or otherwise shall waive or impair any right to

arbitration (or to make requests to any court or tribunal in connection therewith) that the AIG

Parties may have under the AIG WC Program Agreements or the right of any party to contest

such right or request.  Nothing contained in the Plan, this Confirmation Order, the automatic stay

or otherwise shall impair the AIG Parties' ability to administer, handle, defend, settle, and/or pay

in the ordinary course of business the claims of the workers' compensation claimants asserted

against the AIG Parties' Insurance Policies and amounts related to such claims as provided for

under such Insurance Policies.  The AIG Parties will continue to adjust and pay workers'

compensation claims according to the terms and conditions of the workers' compensation

Insurance Policies issued by any of the AIG Parties to the extent required by applicable law and

pursuant to the terms of such Insurance Policies.  The "AIG Parties" means National Union Fire

Insurance Company of Pittsburgh, PA and/or any of its affiliates and successors that provided

insurance or insurance under any of the Insurance Policies (including, without limitation, AIG

WC Program Agreements), and any third party administrator acting on behalf of such

insurers.  The "AIG WC Program Agreements" mean any workers' compensation insurance

policies and/or related agreements, endorsements, addenda and schedules issued to the Debtors

by the AIG Parties or entered into between the Debtors and the AIG Parties.  The AIG Parties

shall be deemed a Releasing Party under the Plan; however, for the avoidance of doubt, the AIG

Parties are not releasing any claims or rights arising under Insurance Policies providing coverage

to directors and officers.  Nothing in the immediately preceding sentence is intended to nor shall

it affect any rights or obligations of the AIG Parties under the Insurance Policies providing

coverage to directors and officers issued by the AIG Parties.

41.     <u>U.S. Department of Justice.</u>     Notwithstanding any provision to the contrary in the Plan, this Order or any supplementing plan documents (collectively, "<u>Documents</u>"), as to the United States, nothing in the Documents shall: (1) affect the rights of the United States to assert setoff and recoupment and such rights are expressly preserved; (2) require the United States to file an administrative claim in order to receive payment for any liability described in Section 503(b)(1)(B) and (C) as provided in Section 503(b)(1)(D) of the Bankruptcy Code; (3) cause the payment of an Allowed Claim of the United States to be withheld solely because the United States also possesses a Disputed Claim; (4) affect or impair the exercise of the United States' police and regulatory powers against the Debtors, the Debtors' Estates or any non-Debtor; (5) except to the extent provided in Section 1125(e) of the Bankruptcy Code, (i) release, enjoin or discharge any non-Debtor from any claim, liability, suit or cause of action of the United States, or (ii) enjoin the United States from bringing any claim, suit, cause of action or other proceeding against any non-Debtor for any liability whatsoever; (6) be construed as a compromise or settlement of any claim, liability, suit, cause of action or interest of the United States; or (7) cause the Allowed Claims of the United States to be eliminated pursuant to the de minimus claim procedures set forth in Article V.O of the Plan.  Notwithstanding the treatment in the Documents of Allowed Unbudgeted Administrative Claims, unless otherwise agreed by the United States in writing, all administrative expense claims of the United States that are Allowed pursuant to the Plan or under the Bankruptcy Code shall be paid in full and shall accrue interest and penalties as provided by non-bankruptcy law until paid in full.  To the extent the Allowed Priority Tax Claims of the United States (including any penalties, interest or additions to tax entitled to priority under the Bankruptcy Code), if any, are not paid in full in cash on the Effective Date, then such Allowed Priority Tax Claims shall accrue interest commencing on the

Effective Date at the rate and method set by applicable non-bankruptcy law and shall be paid in accordance with Section 1129(a)(9) of the Bankruptcy Code.  Penalty claims of the United States shall be assessable by the United States.  Moreover, nothing shall effect a release, discharge or otherwise preclude any claim whatsoever against any Debtor or any of the Debtors' Estates by or on behalf of the United States for any liability arising a) out of pre-petition or post-petition tax periods for which a required return has not been filed or b) as a result of a pending audit or audit that may be performed with respect to any pre-petition or post-petition tax period. Further, nothing shall enjoin the United States from seeking to amend any claim against any Debtor or any of the Debtors' Estates with respect to any tax liability a) arising out of pre-petition or post-petition tax periods for which a required tax return has not been filed or b) from a pending audit or audit that may be performed with respect to any pre-petition or post-petition tax period.  Any liability arising a) out of pre-petition or post-petition tax periods for which a required return has not been filed or b) as a result of a pending audit or audit which may be performed with respect to any pre-petition or post-petition tax period shall be treated in accordance with the terms of this paragraph, the Plan, and the Bankruptcy Code. Without limiting the foregoing but for the avoidance of doubt, nothing contained in the Documents shall be deemed to determine the tax liability of any person or entity, including, but not limited to, the Debtors and the Creditors' Fund Trust, nor shall the Documents be deemed to have determined the federal tax treatment of any item, distribution, or entity, including the federal tax consequences of this Plan, nor shall anything in the Documents be deemed to have conferred jurisdiction upon the Bankruptcy Court to make determinations as to federal tax liability and federal tax treatment except as otherwise provided under  the Bankruptcy Code, including Section 505.

42.     <u>Illinois Department of Revenue</u>. Notwithstanding any provision to the contrary in the Documents, as to the Illinois Department of Revenue and the Illinois Department of Employment Security (collectively, the "<u>Illinois Taxing Authorities</u>"), nothing in the Documents shall: (i) except as provided by the exculpation provision of Section VI.D of the Plan, release, enjoin or discharge any non-Debtor from any claim, liability, suit or cause of action of the Illinois Taxing Authorities from liability for taxes for which they can be held liable nor shall anything in the Documents enjoin the Illinois Taxing Authority from bringing any claim, suit, cause of action or other proceeding against any non-Debtor for taxes for which they can be held liable; or (ii) affect the rights of the Illinois Taxing Authorities to assert setoff and recoupment and such rights are expressly preserved.

43.     <u>Estate Representative</u>. Pursuant to section 1123(b)(3) of the Bankruptcy Code, upon the satisfaction of the conditions set forth in Section III.O.5 of the Plan, the Litigation Trustee shall be appointed as the representative of the Estates solely with respect to the Charney Arbitration.

44.     <u>Plan Amendments</u>.  The Debtors are hereby authorized to amend or modify the Plan at any time prior to the substantial consummation of the Plan, but only in accordance with section 1127 of the Bankruptcy Code and Section VIII.A of the Plan, without further order of this Court.

45.     <u>Confirmation Order Supersedes</u>.  It is hereby ordered that this Confirmation Order shall supersede any Bankruptcy Court orders issued prior to the Confirmation Date that may be inconsistent with this Confirmation Order.

46.     <u>Dissolution of Creditors' Committee</u>.  On the Effective Date, the Creditors' Committee shall be dissolved and the members of the Creditors' Committee shall be

released and discharged from any further authority, duties, responsibilities, and obligations related to, or arising from, the Chapter 11 Cases, except that the Creditors' Committee shall continue in existence and have standing and capacity to prepare and prosecute applications for the payment of fees and reimbursement of expenses incurred by the Creditors' Committee or its respective Professionals.

47.     Adequate Assurance Deposit Accounts. No later than five business days following the date of entry of this Confirmation Order, all funds in the adequate assurance deposit account established by the Debtors pursuant to the Final Order Establishing Adequate Assurance Procedures with Respect to the Debtors' Utility Providers [Docket No.286] shall be returned to the Debtors.

48.     References to Plan Provisions.  Failure specifically to include or reference a particular section or provision of the Plan or any related agreement in this Confirmation Order shall not diminish or impair the effectiveness of such section or provision, it being the intent of this Court that the Plan be confirmed and such related agreements be approved in their entirety.

49.     Inconsistencies Among Plan Documents. Without intending to modify any prior order of this Court (or any agreement, instrument or document addressed by any prior order) except as provided for herein or in the Plan, in the event of an inconsistency between the Plan, on the one hand, and any other agreement, instrument, or document intended to implement the provisions of the Plan (other than an agreement or document that is Filed with the Plan Supplement), on the other, the provisions of the Plan shall govern (unless such document or agreement is a Plan Supplement document).  In the event of any inconsistency between the Plan and a Plan Supplement document, the Plan Supplement document shall control.  In the event of any inconsistency between the Plan, a Plan Supplement document, or any other agreement,

instrument or document intended to implement the provisions of the Plan and this Confirmation Order, this Confirmation Order shall control.

50.    <u>Right to Seek to Vacate Plan</u>. In accordance with Section VII.D of the Plan, the Debtors reserve the right to revoke or withdraw the Plan at any time prior to the Effective Date. If the Plan is revoked or withdrawn pursuant to Section VII.D of the Plan, or the Effective Date does not occur, then: (i) the Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of any Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void; and (iii) nothing contained in the Plan shall (a) constitute a waiver or release of any Claims or Interests or Claims by any Debtor against any other Entity; (b) prejudice in any manner the rights of such Debtor, the Creditors' Committee, the Lender Committee Parties, the Committee of Lead Lenders, the Standard General Parties, the Holder of any Claim or Interest, or any other Entity; or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by such Debtor, the Creditors' Committee, the Lender Committee Parties, the Committee of Lead Lenders, the Standard General Parties, or any other Entity.

51.    <u>Retention of Jurisdiction</u>. The assets of the Debtors shall remain subject to the jurisdiction of this Court until the Effective Date. Notwithstanding the entry of this Confirmation Order, from and after the Effective Date, this Court shall retain such jurisdiction over these Chapter 11 Cases as is legally permissible, including exclusive jurisdiction over those matters and issues described in Article IX of the Plan.

DOCS_DE:222052.7 03635/001

**U.    Substantial Consummation**

52.    On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127 of the Bankruptcy Code.

**V.    Final Order**

53.    This Confirmation Order is a Final Order, and the period in which an appeal must be Filed shall commence immediately upon the entry hereof.

**W.    Reversal**

54.    If any or all of the provisions of this Confirmation Order are hereafter reversed, modified or vacated by subsequent order of this Court or any other court, such reversal, modification or vacatur shall not affect the validity of the acts or obligations incurred or undertaken under or in connection with the Plan prior to the Debtors' receipt of written notice of such order.  Notwithstanding any such reversal, modification or vacatur of this Order, any such act or obligation incurred or undertaken pursuant to, and in reliance on, this Order prior to the effective date of such reversal, modification or vacatur shall be governed in all respects by the provisions of this Confirmation Order and the Plan and all related documents or any amendments or modifications thereto.

**X.    Notice of Confirmation of the Plan**

55.    Pursuant to Bankruptcy Rules 2002(f)(7) and 3020(c)(2), the Debtors or the Post-Confirmation Debtors are directed to serve a notice of the entry of this Confirmation Order and the establishment of bar dates for certain Claims hereunder, substantially in the form of Appendix II attached hereto and incorporated herein by reference (the "Confirmation Notice"), on all parties that received the Confirmation Hearing Notice, no later than ten (10) Business Days after the Effective Date; provided, however, that the Debtors or the Post-Confirmation Debtors shall be obligated to serve the Confirmation Notice only on the record

DOCS_DE:222052.7 03635/001

Holders of Claims or Interests as of the Confirmation Date; and provided, further, that no service

of the Confirmation Notice shall be required to be made upon any person to whom the Debtors

mailed (a) a notice of the commencement of these Chapter 11 Cases, (b) a notice the meeting of

creditors pursuant to section 341 of the Bankruptcy Code, (c) a notice of bar dates for filing

proofs of claim established in these Chapter 11 Cases or (d) the Solicitation Packages or other

materials referenced in the Solicitation Affidavits of Service, and received any such notice or

materials returned by the United States Postal Service (or other applicable courier or delivery

service) marked "undeliverable," "forwarding order expired" or any similar marking or reason,

unless the Debtors have been informed in writing by such person of that person's new address.

As soon as practicable after the entry of this Confirmation Order, the Debtors shall make copies

of this Confirmation Order and the Confirmation Notice available on Prime Clerks' website at

cases.primeclerk.com/americanapparel.

56.     Service of the Confirmation Notice described in the preceding paragraph

in the time and manner set forth therein shall constitute due, adequate and sufficient notice and

no other or further notice shall be necessary.

Dated: Wilmington, Delaware
          Nov 28          , 2018

_____
HONORABLE BRENDAN L. SHANNON
UNITED STATES BANKRUPTCY JUDGE

DOCS_DE:222052.7 03635/001