**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>AAP WINDDOWN, LLC, *et al.*,[1]<br><br>Post-Confirmation Debtors. | Chapter 11<br><br>Case No. 16-12551 (BLS)<br><br>(Jointly Administered)<br><br>Obj. Deadline: May 2, 2019 at 4:00 p.m.<br>Hearing Date: May 15, 2019 at 10:30 a.m.<br><br>**Re: Docket Nos. 2152 and 2153** |

**RESPONSE OF LITIGATION TRUSTEE TO MOTION TO (I) CLARIFY PLAN
PROVISION REGARDING RETENTION OF DOCUMENTS DURING
ONGOING LITIGATION AND (II) PRESERVE DOCUMENTS**

Peter Kravitz, as Litigation Trustee[2] (the "Trustee") of the AAI Litigation Trust (the "Trust"), by and through undersigned counsel, hereby responds to the Motion to (i) Clarify Plan Provision Regarding Retention of Documents During Ongoing Litigation and (ii) Preserve Documents [Docket No. 2152](the "Motion") filed by Dov Charney and Adrian Kowalewski ("Movants"), and states as follows:

**INTRODUCTION**

1. The Motion seeks unnecessary relief because the mechanisms for preservation of relevant information are provided for in the *Third Amended Joint Plan of Liquidation of the Debtors and Debtors in Possession* (the "Joint Plan") confirmed on November 28, 2018. In an effort to escape liability by attempting to set up a spoliation argument, the Movants have sat

---

[1] The Debtors are the following six entities: APP Winddown LLC (f/k/a American Apparel, LLC); APP USA Winddown, LLC (f/k/a American Apparel (USA), LLC; APP Retail Winddown, LLC (f/k/a American Apparel Retail, Inc.; APP D&F Winddown, LLC (f/k/a American Apparel Dyeing and Finishing, Inc.); APP Knitting Winddown, LLC (f/k/a KCL Knitting, LLC); and APP Shipping Winddown, Inc. (f/k/a Fresh Air Freight, Inc.) (collectively, the "Debtors").

[2] The Litigation Trustee was appointed in the Debtors' first jointly administered chapter 11 cases pending before the Court at Case No. 15-12055 (the "2015 Case").

PHIL1 7862911v.1

quietly for two years and watched as the Debtors' cases were winding up, not once making any request for any documents. Moreover, during the solicitation process for the Joint Plan that contained procedures and authorization to destroy certain records, the Movants also remained quiet, not objecting to any provisions of the Joint Plan or even reaching out to the Debtors or Trustee to ensure that records they desired were maintained. They sat silent even after having been provided with copies of the Joint Plan and having been informed by litigation counsel for the Trust about the status of the Debtors' records as conveyed by the Debtors. As Judge Jones of the Superior Court of California, where the State Court Action is pending, recognized on December 11, 2018, the Movants appear to be "setting up a spoliation defense" now that their demurrer in the State Court Action was denied.[3] *See* Exhibit F to Motion, Transcript, at 7:7-8. Only recently through this Motion (more than two years after sending a generic litigation hold letter to the Debtors) have the Movants actually identified for the Debtors what information they seek.

2. But, having done so, the Motion is meritless and unnecessary because not a single shred of information that is relevant to the State Court Action is alleged to have been destroyed by the Debtors, and the Movants have not engaged the Debtors in the last two years since the Trust has been investigating and pursuing the claims assigned to it. Moreover, there are procedures under the Joint Plan for handling the books and records of the Debtors, and the Debtors recently offered to provide notice to the Movants before destroying anything so the Movants could make a determination of whether they wanted access to it. Given the strategic nature of the spoliation "set up," the Movants nevertheless maintained the manufactured dispute set forth in their Motion.

---

[3] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

## BACKGROUND

3. On October 5, 2015, the Debtors commenced chapter 11 proceedings to pursue and effectuate a pre-arranged chapter 11 plan of reorganization. On January 27, 2016, the plan of reorganization (the "Prior Plan") was confirmed, and on February 5, 2016, the Prior Plan became effective (the "Effective Date"). As of the Effective Date, the Trust was established and certain of the Debtors' causes of action were transferred to the Trust for the benefit of the unsecured creditors and Trust beneficiaries. Certain of the assets transferred to the Trust include claims and causes of action against the Debtors' former Chief Executive Officer, Dov Charney ("Charney") and former Chief Financial Officer, Adrien Kowalewski ("Kowalewski").

4. Since that time, the Trust has been investigating and litigating various claims, including against the Movants. In addition, during that period, Charney has also been involved in various lawsuits with the Debtors and former directors of the Debtors. Because the Debtors were reorganized and continued with operations under the Prior Plan, the books and records of the Debtors were still assets of the Debtors, not the Trust, as the Trust Agreement makes clear. As the Court is aware, the Debtors filed bankruptcy again on November 14, 2016, and sought to liquidate and wind down their affairs. On November 28, 2018, the Court confirmed the Debtors' Joint Plan. Movants received notice of the Joint Plan, but did not object to its confirmation.

5. More than two years ago, on January 18, 2017, counsel for Charney (who now also represents Kowalewski), sent a letter to both counsel for the Trust and counsel for the Debtors demanding that "Documents and evidence relevant to the Litigation" be retained, without providing any specificity. **Exhibit 1**. In the letter, Movants acknowledged that "assets of American Apparel, Inc. and its affiliates are in the process of being liquidated and sold." Despite this awareness, Movants chose not to participate in the Joint Plan process, decided not to

object to the Joint Plan, and let two years pass before contacting the Debtors again. The Trust made sure that Charney was not only served with the notice of the Joint Plan when it was filed, but the Trust's counsel also provided courtesy copies of the Joint Plan to Movants' counsel on November 16, 2018. **Exhibit 2.**

6.     Thereafter, on December 11, 2018, counsel for the Trust called Movant's counsel and informed him of the information that the Trust had requested and obtained from the Debtors, including the existence of two storage facilities containing hard copy records of the Debtors, an understanding of the company's servers and electronic data and the Debtors' plans for shutting down the servers, and other information that the Trust had obtained from the Debtors through its efforts to gather relevant information during the liquidation and wind down. Movants' counsel was encouraged to contact the wind down agent for the Debtors to discuss the need for information. Almost another month passed before a telephone call was had between the Debtors and Movants, and as it was relayed to the Trust, Movants did not request any specific information from the Debtors. Instead, the request notably and strategically was limited only generally to whatever the Trust obtained from the Debtors. There was no stated desire to preserve anything else.

7.     Again, instead of making a request to the Debtors for specific information, the Movants next chose to send another preservation letter to the Trust on January 18, 2019 (Exhibit H to the Motion), which merely asks the Trust to preserve "certain company documents and data [that were] scheduled for imminent destruction" by the wind down agent for the Debtors. No specificity was provided. Why? Because it was simply another attempt to "set up" a future spoliation argument hoping that something relevant to the case was, in fact, destroyed. In response, the Trust again explained the legal and practical distinction between the Trust and the

Debtors, confirmed that the Trust had not discarded any relevant information in its possession, and took efforts to secure and obtain additional information from the Debtors. *See* Exhibit I to the Motion. Further, the Trust again urged the Movants, if they were sincere in their desire to preserve information, to likewise obtain information from the Debtors if they thought the Debtors may be abandoning relevant assets. *See id*.

8. True to form, the Movants again avoided communicating with the Debtors, which are the entities that possess and control the company information. Instead, another letter was sent to the Trust in furtherance of their "set up" of a later spoliation attempt. Exhibit J to the Motion. In response, the Trust made clear that despite Movants' belief, this Court approved the Trust Agreement, which expressly provides that "[t]he Litigation Trust shall have a separate existence from all of the Reorganized Debtors." The distinction between the Trust and Debtors is real, both legally and practically. As such, the Trust again suggested that Movants "take efforts with the Debtors to secure and obtain information from the Debtors [they] believe [they] need to defend the case." Exhibit K to the Motion. Instead of taking those efforts over the last two years, Movants have instead filed their Motion.[4]

### ARGUMENT

**A. The Motion is Premature as No Relevant Documents are Being Destroyed to the Knowledge of the Trust and it Seeks an Advisory Opinion on California Discovery Obligations**

9. Despite being informed that nothing has been destroyed relevant to the State Court Action, and the Debtors' offering to provide notice to them before destroying anything, the Movants have nevertheless seen fit to proceed with their Motion. The Motion, however, is

---

[4] For unexplained reasons, the Debtors contacted an associate at Jones Day in Los Angeles, California instead of the people known to be directly involved with the Debtors and their books and records. Exhibit L to the Motion. While the request from the Movants to that associate is not part of the record and has not been disclosed to the Trust, it is notable that the associate is confused in that he references a "Charney arbitration" and provides a notice in connection with that proceeding.

5

premature and merely seeks to "clarify" the plain terms of the Joint Plan through an advisory opinion. Again, the Trust's understanding is that *nothing* relevant to the State Court Action with the Movants has been destroyed by the Debtors. The hard-copy documents still remain in the storage facility and the Trust has reviewed and copied what it believes is relevant to its pursuit of the claims against the Movants. The Movants should do the same—and indeed, nothing prevents them from doing so. According to the Debtors, the company's main server still exists without anything having been deleted from it, and copies of what the Trust believed was relevant information for its claims from the server, including .PST email files and shared network folders, have been delivered to the Trust in electronic format. The Movants should likewise obtain what they believe is relevant from the Debtors. Another company server was abandoned pursuant to Exhibit III.K of the Joint Plan, but because of the uncertainty of information contained on it, the Trust requested that it be delivered to it in an abundance of caution. That server will be preserved.

10. Thus, as is made clear in the Motion, there is no item that is currently sought to be destroyed that is relevant to the State Court Action. Moreover, the relief sought is an inappropriate advisory opinion that the Joint Plan and related confirmation order do not modify California discovery rules. Motion at 8. Advisory opinions for use in other litigation should not be addressed by this Court. *See In re Cubic Energy, Inc.*, 587 B.R. 849 (declining to rule on motion seeking interpretation and enforcement of plan provisions); citing *Coffin v. Malvern Fed. Sav. Bank*, 90 F.3d 851, 854 (3d Cir. 1996) (vacating bankruptcy court's "finding" to the extent it interpreted plan provision regarding survival of a lien). Other than the improper advisory opinion, the Movants ask that the Court direct the Trustee and Debtors to comply with the Joint Plan when there is no evidence to suggest that its provisions have been violated by either party.

This, too, is both premature and advisory in nature. *See Waynesborough Country Club v. Diedrich Niles Bolton Architects, Inc.*, 2011 U.S. Dist. LEXIS 122563, *8-9 (E.D. Pa. Oct. 24, 2011) ("Like the prohibition on advisory opinions, the ripeness doctrine prevents courts from 'entangling themselves in abstract disagreements' through abstention from making premature adjudication").

### B. The Trust and the Debtors are Separate and Distinct Entities

11.     The Movants have not made any attempt to obtain specific information from the Debtors; rather, they are seeking to impose a broad obligation on the Debtors to retain everything, or an obligation on the Trust to take possession of everything the Debtors have. Only recently, in late February 2019, did Movants provide categories of information sought. The Trust, however, having no connection to the Debtors and not having access to personnel to address the requests, is unable to direct the Debtors where such information may reside in the Debtors' own books and records. Logic, efficiency, and productivity would suggest that the Movants do what has been asked of them for years—work directly with the Debtors to ensure they have everything they desire. It is remarkable that Movants have chosen to not even ask the Debtors for information for the State Court Action prior to this Motion.

12.     Contrary to the Movants' purported belief, the Trust and the Debtors' estates are separate and distinct entities, and the Trustee is not a representative of any Debtor. As specifically set forth in Section 1.7(e) of the Trust Agreement, "the Litigation Trustee does not have possession, custody or control over any of the books and records of the [Debtors] within the meaning of the Federal Rules of Civil Procedure and shall have no power over the books and records of the Debtors or Reorganized Debtors beyond the rights granted herein." *See* Trust Agreement at Section 1.7(e). Moreover, as specifically set forth in the Trust Agreement, the

Trust has "a separate existence from all of the Reorganized Debtors" and "[i]n no circumstance shall the Litigation Trust or Litigation Trustee be the representative of any Reorganized Debtor." *See* Section 1.1 of the Trust Agreement. Accordingly, the Trust has no power or authority over the Debtors or their property, other than the causes of action and rights specifically assigned to it by the governing documents.

13. From a practical perspective, the Trust spent significant time and effort negotiating language in the Joint Plan to preserve the relevant records of the Debtors—third parties as they relate to the Trust. Additionally, the Debtors have not simply turned over information to the Trust due to confidentiality and privilege concerns they had. The Trust, Debtors, and Gildan Activewear, the purchaser of the Debtors' primary assets, negotiated agreements before the Debtors would turn over certain records. Protective Orders and confidentiality agreements also had to be addressed in connection with the review of hard copy documents. As a result, the Trust neither has possession of nor the authority to simply exercise control over the Debtors' books and records, which under the Trust Agreement and Joint Plan, remain under the possession, custody, and control of the Debtors. Notwithstanding that, the Trust has worked proactively with the Debtors (as Movants should have) to preserve relevant data. In this regard, as the Movants are aware, the Trustee has requested and obtained access to certain books and records maintained by the Debtors and has been informed that all other records are either in a third party storage facility or in the process of being stored on a stand-alone storage device, with the exception of the company's main server. Thus far, the Trust has been unable to address the totality of the company's main server because the Trust has not yet been informed of what the main server contains that has not been backed up on a stand-alone storage device. If the information that is contained on the main server and has not been backed up is

relevant to the State Court Action, then the Debtors have an obligation to preserve it until February 5, 2022, six years after establishment of the Trust, as explained below.

    **C. The Joint Plan Requires the Debtors to Maintain Records Relating to the Litigation, and Give Notice of Contemplated Destruction for Non-Related Information**

    14.    The Movants' position that the Trustee has or will allow documents or data that may be relevant to the State Court Action to be destroyed is not only premature as no such destruction is threatened, but it also ignores the key provisions of the Joint Plan and Trust Agreement.  Indeed, in an effort to preserve all data and documents that could be potentially relevant to the State Court Action, the Trustee negotiated specific provisions in the Joint Plan to ensure that the relevant information would be maintained by the Debtors, and that when the time came, the Trust would have access to those documents and data maintained by the Debtors or their third-party agent during the pendency of the State Court Action.  In furtherance of this effort, the Joint Plan specifically vests sole custody and control of the books and records in the Debtors and requires that the Debtors maintain the Specified Books and Records (as defined in the Trust Agreement) until February 5, 2022.[5]  *See* Joint Plan at III.K.1 and Trust Agreement at Section 1.7(b) (requiring that the Specified Books and Records be maintained and preserved by Debtors until six years from the date of the Trust Agreement).  The Trust agrees with Movants that the Debtors must retain the relevant records under Section III.K.4 of the Joint Plan until at least February 5, 2022.  Motion at ¶ 20.  And while the Debtors are also authorized to transfer books and records to a storage agent for the purpose of preservation, the Joint Plan specifically accounted for and preserved the Trust's right to access those records upon request.  *See* Joint Plan at III.K.3.

---

[5]    The Trust Agreement defines Specific Books and Records as books and records related to the Specified Causes of Action which are further defined by Section I.A.139 of the Prior Plan.

15.  As the Movants acknowledge, the Trustee is able to request that the Debtors provide him with access to the documents and records whether the Debtors maintain them or they have transferred them to a third party storage agent. *See* Joint Plan at III.O.2 and III.K.3. Importantly, neither the Joint Plan nor the Trust Agreement prohibit the Debtors from providing access to or copies of requested information to the Movants—they just need to be proactive in their desire to obtain that information. Therefore, mechanisms are in place for the Debtors to preserve the information relevant to the claims against the Movants—defined as the Specified Books and Records. Joint Plan at III.K.1-3.

16.  Additionally, various constituents that may have a need for the Debtors' records were granted rights to request information from the Debtors, including the Trustee, the Creditor's Fund Trustee (established in the instant bankruptcy case), and the Standard General Parties. To the extent that the information is transferred to the Creditor's Fund Trustee or Standard General Parties, the Trustee ensured in the Joint Plan that his access rights remained. Joint Plan at § III.K.4.

17.  Finally, to the extent that the Debtors desire to abandon and/or destroy any records *other than those that are required to effectuate the terms and conditions of the Plan and various Settlements,* the Debtors are required to notify certain parties, including the Trustee, prior to the destruction of any documents or records to allow for those parties the opportunity to confirm that the documents to not affect the duties and obligations under the Plan and Settlement. Thus, to the extent that the Debtors believe that information they wish to destroy are not Specified Books and Records relating to the State Court Action, they nevertheless need to provide notice to the Trustee under Section III.K.5 of the Joint Plan. If the Trustee determines the records should not be destroyed, the Trust may require the Debtors to continue to maintain

the records or request that they be transferred pursuant to Section III.K.4 of the Joint Plan. All of the foregoing provisions of the Joint Plan were intended to ensure that all documents and records related to the State Court Action would be preserved and maintained so that they would be available to all parties during the course of discovery to the extent they would be responsive to document requests.

18.     Importantly, to date, nothing has occurred that runs afoul of these preservation efforts and the Trustee has not permitted the destruction of any documents or data that may be relevant to the claims or defenses in the State Court Action as alleged by the Movants. *See* Motion at 2. In addition, the Trustee is not aware that Debtors have destroyed any such information. Moreover, because the Movants do not object to the destruction of the documents listed in Exhibit III.K of the Plan Supplement identifying documents Debtors intend to destroy, *see* Motion at fn. 8, there is no threat of imminent destruction of documents. As such, the Motion is premature and improperly seeks an advisory opinion from this Court regarding the parties' discovery obligations in another forum.

**WHEREFORE**, for the reasons set forth herein, the Litigation Trustee respectfully requests that the Court deny the Motion, but to the extent any relief is entered in response to the Motion, that relief should reinforce the Trustee's bargained-for rights and obligations under the Joint Plan and not expand them as Movants seem to suggest.

| | |
|---|---|
| Dated: May 2, 2019 | **KLEHR HARRISON HARVEY BRANZBURG LLP**<br><br>*/s/ Richard M. Beck*_____<br>Richard M. Beck (DE Bar No. 3370)<br>Sally E. Veghte (DE Bar No. 4762)<br>919 Market Street, Suite 1000<br>Wilmington, Delaware 19801-3062<br>Telephone: (302) 426-1189<br>Facsimile: (302) 426-9193<br>Email: rbeck@klehr.com<br>           sveghte@klehr.com<br><br>*Counsel for the Litigation Trustee* |